Briscoe v. McMillan.

DANIEL BRISCOE et al. *v.* JOHN E. McMILLAN et al.

(*Knoxville.*    September Term, 1906.)

1. **TAXATION.**    Injunction against illegal assessment of taxes is not prevented by statute prohibiting injunction against collection of State taxes, when.

The statute providing a remedy against the collection of illegal State taxes applies to the collection of such taxes only, and does not prevent the maintenance of a bill to declare the action of the State board of equalizers to be illegal and void, and to enjoin the certification of its action in the assessment of taxes. (*Post, pp.* 123, 126, 127.)

Code cited and construed:    Secs. 1063, 1064 (S.); secs. 930, 931 (M. & V.).

Acts cited and construed:    1873, ch. 44.

2. **SAME.**    Same.    Suit against officials to enjoin certification of illegal and void assessment of taxes and their collection thereunder is not a suit against the State.

A bill against officials to enjoin the certification of the illegal and void action of the State board of equalizers in the assessment of taxes, and to enjoin the collection of taxes by officials under such void action and prohibiting their collection of taxes upon valuations in excess of those made by the county board of equalizers, is not a suit against the State, but a suit against the officials. (*Post, pp.* 123, 127, 128.)

Cases cited and approved:    Railroad v. Bate, 12 Lea, 577; Taylor v. Railroad, 88 Fed., 351, 31 C. C. A., 537.

3. **SAME.**    Remedy by bill in chancery against the void action of the State board of equalizers in the assessment of taxes.

The void action of the State board of equalizers in equalizing the assessment of taxes is not final and conclusive, and does

not prevent the maintenance of a bill in chancery to restrain the certification of such void action in the assessment of taxes and to prohibit their collection thereunder. (*Post, pp.* 127-129.)

Acts cited and construed: 1903, ch. 258, sec. 38, subsec. 10.

Cases cited and approved: Bank v. Chattanooga, 8 Heisk., 814; Railroad v. Bate, 12 Lea, 577; Alexander v. Henderson, 105 Tenn., 431; Railroad v. Board (C. C.), 85 Fed., 302.

4. **SAME. Same. State board of equalizers is a quasi court of record, and its action cannot be collaterally attacked except where void for fraud or want of jurisdiction.**

The State board of equalizers of the assessment of taxes constitutes a quasi court of record, and its findings in the exercise of the jurisdiction conferred upon it have the force and effect of judicial determinations, and cannot be collaterally attacked, except where void for fraud or the want of jurisdiction. (*Post, pp.* 129-134.)

Acts cited and construed: 1903, ch. 258, sec. 38, subsec. 4, 5, 7, 8, 9, and 18.

Case cited and approved: Robertson v. Winchester, 85 Tenn., 171.

5. **SAME. Same. Same. But for irregularity in failure to hear evidence, the remedy is by certiorari in a court of law.**

The action of the State board of equalizers in the assessment of taxes, within its jurisdiction and without fraud, is not subject to collateral attack by bill in chancery to restrain the certification of the assessment and extension of taxes according to its action, for irregularities in the modes of procedure or for not hearing any evidence, but for such irregularity in procedure, the remedy is by *certiorari* in a court of law. (*Post, pp.* 133, 134.)

Cases cited and approved: Railroad v. Bate, 12 Lea, 573; State, ex rel., v. Taxing District, 16 Lea, 240.

Briscoe v. McMillan.

FROM KNOX.

Appeal from the Chancery Court of Knox County.— Joseph W. Sneed, Chancellor.

Jourolmon, Welcker & Smith and Templeton & Templeton, for complainants

Attorney-General Cates, J. C. Ford, J. W. Caldwell and J. W. Culton, for defendants.

Mr. Justice McAlister delivered the opinion of the Court.

This bill was exhibited by certain citizens and tax-. payers of Knox county against the county trustee and county court clerk of said county and the comptroller of the city of Knoxville for the purpose of enjoining said officers from assessing and collecting taxes on the property of complainants and other taxpayers of Knox county upon the basis of an assessment made by the State board of equalization. The theory of the bill is that the said assessment made by the State board of equalization is illegal and absolutely void. The second object of the bill is to maintain the validity of the assessment

made by the county tax assessor for the year 1906, as modified by the county board of tax assessors. The chancellor sustained a demurrer interposed by defendants and dismissed the bill. Complainants appealed, and have assigned as error the action of the chancellor.

The material allegations of the bill are that George C. Cardwell, tax assessor of Knox county, assessed for taxation for the year 1906 the property of complainants and the other taxpayers of said county for State, county, and municipal taxation. It is alleged that by this assessment the said county tax assessor increased the valuation of property in Knoxville $5,000,000 in excess of the assessment for the year 1904. It is then alleged that the county board of equalization, representing also the city of Knoxville, met in July, 1906, and, after hearing testimony from time to time, reduced the assessment made by County Assessor Cardwell $1,500,000, leaving still an increase over 1904 of $3,500,000.

It is next alleged that A. D. Collier, attempting to act as a citizen, and also officially as county judge and financial agent of Knox county, appealed to the State board of equalization from the action of the county board in reducing this assessment, and that subsequently S. G. Heiskell, citizen and taxpayer of the county, joined in said appeal. Complainants state they have no copy of the appeal or paper filed with the State board by Messrs. Collier and Heiskell. However, on July 23, 1906, the State board of equalization met at Knoxville, and remained in session for the greater part of two days,

considering said appeal and hearing evidence and statements in regard thereto. But complainants charge that said State board during said session did not hear either evidence or statements in regard to the valuation of more than thirty pieces of property, which were contained in Exhibit A and which had been acted on by said county board of assessors.

Complainants further charge that the appeal or complaint of Messrs. Collier and Heiskell only related to property which had been acted upon by the county board of equalizers, and the assessment thereof reduced. It is further alleged that the State board, in addition to the statements and evidence heard by it in regard to specific property, also heard other statements and testimony in regard to the general percentage of values, and this other general testimony included the testimony and statements of Assessor Cardwell. These statements, it is alleged, were as a rule opinions of the witnesses, and these opinions showed that Cardwell, assessor, had assessed properties in amounts ranging from twenty-five to ninety per cent. of the actual value of the property assessed for the year 1906. Complainants, however, allege that no proof whatever was heard about any of the specific property of complainants, which had been reduced by the county board from the valuation placed upon it by the county assessor; nor was any specific proof heard by said State board of equalization in regard to the valuation of any other property contained in Exhibit A, and which had been assessed by the county assessor and reduced

by the county board. It is alleged that the county board equalized assessments on about six hundred specific pieces of property in said county. Complainants allege that out of more than six hundred pieces of property which the county board, with great labor and pains of investigation,·equalized for purposes of taxation for the year 1906, the State board only heard proof or statements in regard to about thirty pieces of property. Complainants distinctly allege that said State board heard no' proof whatever or statements in reference to any of the said property or assessments of complainants.

The bill further shows that on August 13, 1906, the State board of equalization, sitting at Nashville, or a majority of them, reported to and filed with the county clerk of Knox county its action in regard to the assessment of property in Knox county in the following words, marked "Exhibit C" to the bill: "It is ordered that, with the exceptions hereafter noted, [the] various properties reduced in assessment by the county board from the assessment made on the same by the county tax assessor be restored to the value placed on same by the county tax assessor." The exceptions mentioned in this order of said board are set out in the report, but none of them relate either to the persons or property of any of complainants. It is then charged that the action of the State board, so far as it related to property which had been reduced in valuation by the county board of equalizers, was substantially a raising of assessments upon

property in Knox county by a per cent. and upon an attempted per cent. valuation.

Complainants further alleged that said Exhibit C, already copied herein, contains a full, true, and perfect copy of the entire action taken by said State board of equalization in reference to property in Knox county. The State board of equalization made no record or minute, and pronounced no order or judgment or finding, in reference to said assessment of property in Knox county, except what appears in said Exhibit C. Complainants then alleged that said State board of equalization did not make its findings and take such action and raise said assessments in the manner required by law; and complainants charge that said action of the State board of equalization, as appears from said Exhibit C, was illegal and void.

It is alleged that the reductions made by the county board of equalizers upon property in Knox county, "including the property of your complainants, show in point of fact the present cash value of said property."

The complainants further allege that the assessments made by Cardwell, county tax assessor, and approved by the State board of equalization, exceed the present actual cash value of the properties mentioned on the 10th day of February, 1906, when the same were assessable by law.

It is further alleged that the State board acted upon the testimony of Assessor Cardwell, and have upon the face of their action attempted to fix the assessment upon

the basis of seventy per cent. of the actual cash value of the property; but it is admitted the State board has not assessed the property at a seventy per cent. valuation. It is alleged, however, that, if the assessor made assessments upon the basis of seventy per cent., he violated his oath of office, and that therefore the action of the State board approving his action was illegal.

It is alleged that Cardwell admitted in his testimony before the State board his ignorance of the present cash value of each specific piece of property inquired about, and it is charged that he was in fact ignorant of the same. It is further charged that the State board made no effort to assess or equalize said property by classification of properties, and by wards, civil districts, or counties, as required by law, and that, in attempting to fix correct valuations of property in Knox county, they made no comparison with like property in other counties.

It is then alleged that higher valuations were placed upon Knox county properties than upon like properties in other counties. Therefore it is charged that the action of the State board amounts to an unlawful discrimination against Knox county.

The complainants further alleged that the State board of equalization, in considering assessments in Knox county, made no investigation of, and heard no statements or evidence in relation to, any assessments or valuations of any property, except about thirty pieces of property which had been acted upon and reduced by said

county board of equalizers, and made no investigation whatever of a certain number of pieces of property, viz., about twelve thousand or more, in said county, which are subject to taxation, as said board should have done, and as they are required to do by the statute.

This is a substantial statement of the material allegations of the bill, which is filed by complainants on behalf of themselves, as well as on behalf of all other citizens, property owners and taxpayers of Knox county, whose names and property appear upon said Exhibit A to the bill, and whose property and valuations of property were reduced by said county board of equalizers.

The prayer of the bill is that the action of the State board of equalizers be declared illegal and void, and that an injunction issue requiring the county clerk to certify to the trustee of the county and to the comptroller of the city a tax list in accordance with the action of the county board, and that the county trustee and city comptroller be prohibited from collecting taxes upon valuations in excess of those filed by the county board of equalizers.

The defendants jointly and severally demurred to the bill, assigning ten grounds as follows:

(1)    That the suit is brought to enjoin a judicial act of the State board of equalization, and such action cannot be attacked collaterally, but must be reviewed by appeal, or, if no appeal, then by *certiorari*.

(2)    That the chancery court has no jurisdiction, because it is not charged that the action of the State board

was fraudulent, or that the State board had no jurisdiction, or that there is no adequate remedy at law.

(3)    That complainants failed to make *prima facie* showing that the State board failed in any respect to comply with the law of the State.

(4)    That the bill attacks the action of the State board, which board is, in law and in fact, a court of record, and its entire record in the matter complained of is not before the court.

(5)    Because the bill and exhibits show affirmatively that there has been substantial compliance with the law by the State board, and the bill shows that the State board did not undertake to raise or reduce the taxes of the entire county, but acted upon about six hundred pieces of property only.

(6)    Because *certiorari* is the only remedy in such cases.

(7)    Because there was no fraud at any stage of the proceedings, including the county assessment, or any improper exercise of jurisdiction, to justify the interference of a court of chancery.

(8)    That the State board had jurisdiction, and did not in any respect exceed its jurisdiction, and was not guilty of any substantial irregularities.

(9)    John E. McMillan demurs to the bill, in so far as it seeks to injoin him as county clerk from certifying to the trustee the assessment of property under the order of the State board, and to compel him to certify the tax list according to the actions of the county board, because

the law requires him to certify said assessment pursuant to the order and certificate of the State board, and because as county clerk he is without power to certify the taxes in conformity with the actions of the county board until the same shall have been ratified and approved by the State board, which the bill shows has not been done, and because the court is without power to grant said injunctions, in so far as it applies to the assessment and collection of State taxes or results in hindering and delaying the collection of said taxes in accordance with the action of the State board. As to such taxes, complainants only remedy is to pay under the protest and bring suit.

(10) The defendant Buffat, as trustee of Knox county, demurs because the court is without power to grant the injunction for the reasons set out in the demurrer of McMillan, county clerk, as above quoted.

The chancellor overruled the third and fourth grounds of demurrer, and sustained the remaining eight grounds.

The third ground of demurrer, overruled by the chancellor, raised the objection that the bill failed to show that the State board of equalization had failed to comply with the laws of the State governing the action of said board.

The fourth ground of demurrer, which was also overruled by the chancellor, was based upon the ground that the complainants did not exhibit the entire record of the proceedings of the State board, and that the State board was a court of record, with every presumption in favor of the validity of its action.

No complaint is made of the action of the chancellor in overruling the third and fourth grounds of demurrer, but complainants have appealed from the decree of the chancellor sustaining the other grounds of demurrer and dismissing the bill.

The first question we shall notice, arising on the demurrer, goes to the jurisdiction of the court. It is insisted on behalf of the defendants that the present bill is in effect a suit against the State, and is in contravention of section 1064 *et seq.* of Shannon's Code, embodying the act of 1873, to the effect that no preventive writ of any kind shall be granted by any court to prohibit, or to hinder or delay, the collection of any revenue claimed by the State; but, if the taxpayer considers the tax "unjust or illegal or against any statute or clause of the constitution," he must pay the same under protest and may then within thirty days sue the collecting officer to recover it back.

Section 1063 further provides that there shall be no other remedy "in any case of the collection of revenue or attempt to collect revenue illegally."

We are of opinion the sections of the Code invoked herein are inapplicable in the present case. The statute in question by its express provisions only applies to the collection of taxes. There is no effort here to prevent the collection of taxes, but the object of the bill is to injoin the State board of equalization against the alleged illegal exercise of its jurisdiction in the assessment of said county and municipal taxes.

Briscoe v. McMillan.

This record does not present a case within the purview of the act of 1873, where there is process in the hands of a revenue collector, or where a levy is sought to be made, in which cases the taxpayer is bound to pay the tax under protest and may then sue to recover it back.

Again, we are of opinion this is not a suit against the State, but against certain officers of the county of Knox or the city of Knoxville. *Railroad* v. *Bate,* 12 Lea, 577; *Taylor* v. *L. & N. R. R.,* 88 Fed., 351, 31 C. C. A., 537.

Second. The next insistence is that complainant's remedy, if any, is in the court of law by *certiorari.* The bill, however, proceeds upon the idea that the assessment made by the State board of equalizers is absolutely void and, if such a case is made by the bill, we think the jurisdiction of the chancery court is well settled. *National Bank of Chattanooga* v. *Mayor and Aldermen,* 8 Heisk., 814; *Alexander* v. *Henderson,* 105 Tenn., 431, 58 S. W., 648.

It is true Acts 1903, p. 674, c. 258, section 38, subsec. 10, expressly provides that the action of the State board "shall be final and conclusive as to all matters passed upon by the board and taxes shall be collected upon the valuation so fixed and found by the State board." It will be observed no method is provided by this act by appeal or otherwise for reviewing the action of the State board; but, on the contrary, the act expressly provides that the action of the State board shall be final. Ordinarily this condition would render the remedy by *cer-*

*tiorari* peculiarly appropriate; but if, as alleged in the
bill, the action of the State board of equalization is void,
then the jurisdiction of a court of equity to prevent the
execution of a void judgment is universally recognized.
In such a case, it is wholly immaterial that the act pro-
vides that the action of the State board shall be final,
since such action only relates to the lawful exercise of
the jurisdiction of the board, and not to acts which are
absolutely void.

In *Railroad* v. *Bate,* supra, the act provided that the
action of the board should be final and conclusive. The
court held that, where it proceeded according to the di-
rections of the act, there could be no review of its pro-
ceedings, but that, whenever the board went outside of
the terms of the act, its action was void. In that case,
the remedy by *certiorari* was sustained, but it was not
determined whether the facts presented a proper case
for a bill in equity.

In *L. & N. R. R. Co. & Telephone Co.* v. *Board of Equal-
izers of Tenn.* (C. C.), 85 Fed., 302, it was held that a
bill in equity was a full and adequate remedy against
void assessments.

It being, then, held that this is not a suit against the
State, and that a bill in equity is an appropriate remedy
for the review of the action of the State board of equal-
izers, we proceed to inquire whether, upon the facts al-
leged in the bill, the action of the State board was ab-
solutely void, or whether it was merely irregular. If the
State board had jurisdiction in the premises, and its ac-

Briscoe v. McMillan.

tion was only irregular, then it is well settled a court of equity would have no right to enjoin its proceedings. This proposition is based upon the assumption that the State board of equalizers, under the provisions of the act of 1903, is a court of record clothed with certain jurisdiction.

It is well settled in this State that the decrees of superior courts are valid on collateral attack, even if there are irregularities in the proceedings, if it appear in the record that the court acquired jurisdiction of the person and of the subject-matter of the suit. *Robertson* v. *Winchester*, 85 Tenn., 171, 1 S. W., 781. The statute under which the present State board of equalization acts is chapter 258, p. 632, of the Acts of 1903.

The board is composed of the secretary of state, the treasurer, and comptroller; a majority of them constituting a quorum. The board is required to keep minutes of each day's session, to be signed by the members, and these records are to be preserved in the office of the secretary of state. Subsection 4 of section 38 empowers the board to make rules and regulations for its own government, and to obtain "such evidence, information, and statistics as may be deemed material as to the value and condition of properties to be equalized; to regulate and prescribe the mode of taking evidence, whether by affidavit, deposition or otherwise."

In subsection 5 of section 38 it is provided: "Said board shall have the power to send any of its members

117 Tenn—9

to any portion of the State to obtain information and evidence deemed material."

Subsection 7 of section 38 provides as follows.: "It shall be the duty of the State board of equalizers at such biennial sessions to equalize, compute and fix the values of such properties as are within its jurisdiction by the standard of the actual cash value of the same, and for said purpose said board shall have the power to reduce or increase values of properties so that the values of all assessments equalized by said board shall conform to said standard of actual cash values. Equalization of such properties may be made by said board by classifications of properties and by wards, civil districts or counties in such manner as it may deem will best enable the board to justly and equitably equalize assessments in conformity with said standard: Provided, the State board of equalization shall not have the power to raise the taxes of a whole county or reduce the same by a per cent. on the whole but shall pass upon each piece of property specifically in raising or reducing taxes."

Now, it is said that the State board of equalization is expressly made a court of record by subsection 8 of section 38 in the following language: "Said board shall enter or cause to be entered in a book prepared for the purpose a record of its action in equalizing properties, showing corrections and changes in assessments, increases and decreases in the values of properties by percentage or otherwise, and proper and necessary certificates of the same shall be certified to the clerks of the

county courts, who shall make proper and correct entries of the same upon the tax books to be turned over to the county trustee."

Subsection 9 of section 38 provides: "Said board shall have jurisdiction of and it shall be its duty to equalize at said biennial sessions the assessments of all properties in this State except such as are now required by law to be equalized by the governor, secretary of state and treasurer," etc.

Subsection 18 of section 38 provides that, before the board shall raise, reduce, or in any manner change the assessment on the property in any county, it shall be the duty of said board to give ten days' notice in writing to the chairman of the county court, or the county judge; and provide, further, before said board shall reduce, raise, or in any manner change the assessment of the property in any county, proof shall be taken by said board, and the board shall have power to issue summons for witnesses, etc.; and provided, further, that the board shall give its reasons for any action they may take, and the evidence taken before said board in its consideration of any assessment of the property of any county shall be reduced to writing and filed in the office of the secretary of state."

Now, we fully agree with the contention made on behalf of the State that by the provisions of this act the said board is constituted a quasi court of record, and that its findings in the exercise of the jurisdiction con-

ferred upon it have the force and effect of judicial determinations, and cannot be collaterally attacked.

"The officers whose duty it is to fix assessments, whether as original assessors or as boards of equalization and review passing upon the work of the assessors, act in a judicial or quasi judicial capacity, and their findings, when made in good faith and in the exercise of an actual jurisdiction, are like the judgments of courts, secure from collateral attack." 27 Am. & Eng. Encyc. of Law, pp. 724, 725.

Two well-recognized exceptions to this rule are thus stated in the same authority: "Findings which for fraud or want of jurisdiction are void may be collaterally attacked, but an assessment will not be rendered void, and thus exposed to a collateral attack, for irregularities or errors honestly committed in the exercise of an official discretion." 27 Am. & Eng. Encyc. of Law, pp. 725, 726.

It has already been seen that no allegation of fraud against the State board of equalization is made in the bill, and it affirmatively appears from the recitals of the bill that the State board had jurisdiction in the premises.

The gravamen of the bill, when properly understood, is leveled at an alleged improper exercise of the jurisdiction of the court in the mode of raising the assessments, viz., without hearing evidence in respect of the specific pieces of property, as required by the statute.

But, as already shown, the State board of equalizers

Briscoe v. McMillan.

is a quasi court of record, and its judgment cannot be collaterally attacked upon the ground that the board proceeded in the exercise of its jurisdiction without hearing evidence. A decree or judgment of a court of record having jurisdiction of a person and subject-matter is not void because the court pronounced said judgment without hearing evidence. The appropriate remedy of reviewing such a decree or judgment is by appeal or writ of error, or other direct proceeding. It cannot be collaterally attacked upon such a ground. The allegations of this bill, taken in their strongest light, complain merely of irregularities in the mode of procedure and noncompliance with the requirements of the statute, but do not show want of jurisdiction on the part of the board or that its action was utterly void. The specific allegation is that evidence was heard by the board touching only thirty pieces of property; whereas, the assessment of 570 pieces of property, belonging to complainant was raised without hearing the evidence or individual action on each specific piece of property. The remedy in such a case is by *certiorari* in a court of law. *Railroad* v. *Bate,* 12 Lea, 573; *State, ex rel.,* v. *Taxing District of Shelby County,* 16 Lea, 240.

In *Railroad* v. *Bate,* supra, which was a proceeding by *certiorari,* it was held: "If the board or railroad assessors do not follow the provisions of the statute, their action is subject to the revisory jurisdiction of the courts, invoked by *certiorari.* Although the boards may be officers of the State and proposing to discharge their

duties as such, yet, if they leap the prescribed limits of the law under which they act, it is the right of those about to be injured to ask for, and the duty of the courts to grant, restraining relief, and this may be done by petition for writs of *certiorari* and *supersedeas*."

For the reasons stated, the decree of the chancellor is affirmed, and complainants' bill dismissed, with costs.