## TAMBLE v. PULLMAN CO.

(Circuit Court of Appeals, Sixth Circuit. June 30, 1913.)

No. 2,338.

1. ABATEMENT AND REVIVAL (§ 57*)—ABATEMENT OR SURVIVAL—ACTION TO RECOVER TAXES PAID—PLEADING.

When the declaration in an action against a county trustee in Tennessee to recover taxes paid under protest stated a common-law right of action against the defendant individually to recover all taxes, both state and county, so collected by him, it also included a statutory cause of action to recover the state taxes under Shannon's Code Tenn. § 1061, and on the withdrawal of any claim, except for such taxes, the action became one under the statute, which did not abate on the death of the defendant, but was properly revived against his successor in office.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 286–293; Dec. Dig. § 57.*]

2. TAXATION (§ 146*)—TENNESSEE STATUTE—CARS OF FOREIGN CORPORATION.

A state has power to tax property permanently located within its jurisdiction, although owned by a foreign corporation and having its actual use only in connection with other parts of a system employed in interstate commerce, and also to tax movable property of such a corporation brought into the state to be there so used and employed; and when such property is not continuously the same, but, as in case of cars, is constantly changing, it may fix the tax by an appraisement of the average amount so used. But in order to exercise such power a state must, by appropriate legislation, fix a taxable situs for such movable and changing property, and provide a method and basis for its assessment; and this the state of Tennessee has not done, with respect to passenger cars owned by nonresident corporations.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 254; Dec. Dig. § 146.*

Taxation of foreign corporations, see note to McCanna & Fraser Co. v. Citizens' Trust & Surety Co. of Philadelphia, 24 C. C. A. 13.]

3. TAXATION (§ 490*)—FINDINGS OF STATE BOARD OF EQUALIZATION—REVIEW—COLLATERAL ATTACK.

The state board of equalization of Tennessee, created by Acts Tenn. 1907, c. 602, is not vested with any part of the judicial power of the state, and although its decisions are made reviewable by writ of certiorari from the Supreme Court, they are not such judgments as render the questions determined res judicata, if not so reviewed, but may still be attacked collaterally by a suit in equity on the ground that the board acted without jurisdiction.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 872, 873; Dec. Dig. § 490.*]

In Error to the Circuit Court of the United States for the Middle District of Tennessee; Edward T. Sanford, Judge.

Action at law by the Pullman Company against Peter M. Tamble, trustee of Davidson County, Tenn. Judgment for plaintiff, and defendant brings error. Affirmed.

See, also, 173 Fed. 200.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Until the arising of the present controversy, the Pullman Company (hereafter called the "Company") had not been taxed on its cars by the state of Tennessee, or by any municipality in the state, but there had been levied against it only an annual, general, specific tax, imposed by, and paid to, the state. Tennessee has a system by which the tax-collecting officer may assess and collect taxes, not only for the current year, but also for the three preceding years, upon property which by mistake of law or fact has not been assessed. Conceiving that a considerable number of cars belonging to the Company had a taxable situs at the city of Nashville, in the county of Davidson, the county trustee of that county undertook to assess these cars for the year 1907, and to "back assess" them for the years 1904, 1905, and 1906. This proceeding was not finished until 1908, and was accordingly made to include taxes for that year. After a hearing, the county trustee fixed the valuation of these cars as personal property in Davidson county for each of the five years, and rendered "judgment" in favor of the state for a five-year total of $7,908 tax and interest, and in favor of Davidson county for $15,204, the five-year total of county taxes and interest. He also added the statutory penalty of 15 per cent.

Following the statutory procedure, the Company appealed this proceeding to the state board of equalization. This board, after hearing, increased the valuations and "gave judgment" against the Company for a total of $9,610 due to the state for the five years 1904–1908, and for a total sum of $21,132 taxes due to Davidson county for the same years. This so-called judgment was, by the board, certified to the county trustee of Davidson county, the proper collecting officer, and the Company brought suit in the United States Circuit Court for the Middle District of Tennessee to enjoin such collection. That court denied the motion for preliminary injunction, indicating that if the Company was aggrieved its proper remedy was to pay the tax under protest and sue to recover. The Company adopted this course, paid the entire state and county tax and brought this suit in the court below against the county trustee, and others, to recover the payment so made. Later, it limited its demand in this suit to the recovery of the state tax, and its position, as so limited, was sustained by the court below and final judgment rendered accordingly. The county trustee brings this writ of error.

Upon the trial, a jury was waived, and the court found the facts. They may be epitomized as follows: The Company was organized under the laws of Illinois, where its principal office is. It has, in Tennessee, no place of business, except as its district agencies may be so called. It is engaged in the business of operating sleeping cars and parlor cars upon railroads throughout the United States, Canada, and Mexico. In the management of this business, it has division superintendents, each of whom has supervision throughout several states. It also has district agents, each of whom has a subordinate and modified supervision over a smaller district. It has such agencies in Tennessee, at Memphis, Nashville, Knoxville, and Chattanooga. The territory of the Nashville district agent extends from Evansville, Ind., and Bowling Green, Ky., south to Decatur and Bridgeport, Ala., and from McKenzie, Tenn., east to Harriman, Tenn. His duties are generally to inspect and ride on the cars within these limits, see that they are kept in proper condition, and see that the Company's employés perform their duties to the Company and to the public. He has authority to hire and discharge employés working within his district; he assigns cars to the various runs which begin and end within his district; to him requisitions are made by the railroads or other persons desiring additional cars not already in service; and he and the agents of similar authority at the other places named are the only representatives of the Company within the state.

The Tennessee taxing laws contemplate the ad valorem assessment of all personal property situated within the state on the 10th day of January of each year. The cars assessed in this proceeding were within Davidson county at some time during that day, and are all included within three classes:

1. *Emergency or Protection Cars.* The Company kept, at Nashville, a reserve of cars for use in emergencies. There were three or four of such cars usually on hand, excepting as they were drafted into use. Their identity was

continually changing. They were ready to supply any sudden and irregular demand—as to replace a disabled car, to care for an unexpected traffic, etc. They were day by day attached, indiscriminately, to through and local trains— being started on a journey to Memphis, to be returned the next day, or not at all, or to Chicago, or to New York, perhaps to be returned later, or perhaps not, all as dictated by the daily situation, at Nashville, in connection with the business in other parts of the country. When such a car was sent out, and was not to come back at once, its place in the reserve was supplied by some other car as soon as possible.

2. *Local Cars.* Cars which were in service, on a regular run of which Nashville was one terminus. Some of these runs were wholly within the state, bringing the car or its substitute back to Nashville every other day; others extended beyond the state, and a given car, or its substitute, would be in Nashville every second or third or fourth day. The stop or lay-over of these local cars, in Nashville, varied from 12 to 36 hours. A particular car would usually remain for some time in service in the same run, but changes were frequent, and the car sent out might or might not come back.

3. *Through Cars.* These cars passed through Nashville in a regular run from some point without the state to another point beyond the state. In these runs, a given car, or the one substituted for it, would be in Nashville at regular periods, sometimes every day, sometimes at longer intervals. The delay of each car at Nashville ordinarily varied from a few minutes to a few hours.

As to all these classes, the cars were, on January 10th, in Davidson county, only in the course of passing therethrough, or else had been disconnected from some railroad train entering Nashville, and were held for the purpose of being attached to some train going out of Davidson county as soon as needed therefor. The number of cars assessed, as located in Davidson county on January 10th, was the average number in the same manner present therein each day in the year. The Company had no control over the movements of cars in service, but the railroads routed and diverted such cars at their discretion.

Further essential facts will be stated in connection with the specific points to which they refer.

C. T. Cates, Jr., of Knoxville, Tenn., Theo. J. McMorrough, of Nashville, Tenn., Thomas B. Lytle, of Murfreesboro, Tenn., and Barthell, Howell & O'Connor, of Nashville, Tenn., for plaintiff in error.

W. L. Granbery, of Nashville, Tenn. (Gustavus S. Fernald, of Chicago, Ill., of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). When the suit was commenced, the defendants were the collecting officer, Tamble, as trustee of Davidson county, and also Davidson county itself, and J. B. Jetton, one of the state "revenue agents." The declaration alleged that the plaintiff, under duress and protest, had paid to the county trustee the full sum of all county and state taxes, interest, and penalties, for the five years in question. The right to recover was based upon the claims that neither the county trustee nor the state board had any jurisdiction to assess the property in question, that such property never had any taxable situs within the state of Tennessee, and that the valuation adopted by the state board was arbitrary and unfair, and not upon the same basis as the valuations of other property—whereby, if the action taken was allowed to stand, plaintiff would lose its property without due process of law and would be de-

prived of the equal protection of the laws. The Company also insisted that the property assessed consisted solely of instruments of interstate transportation, and that the action of the state authorities was an unlawful interference with interstate commerce. It was not alleged that any part of the sum demanded had been by the county trustee paid over to Davidson county, but it was charged that the trustee had immediately paid over to the revenue agent his statutory percentage of the sum collected. Defendant Tamble demurred, because, among other reasons, the statutory right to pay under protest and sue to recover (section 1061, Shan. Code) attached only to state taxes, and demands for state and county taxes could not be joined in such a suit. The court held that the action could be maintained as a common-law action for the entire sum against the man who had unlawfully collected the entire sum, and also held that the actions, if any, ultimately resulting against the county and the revenue agent, could not be joined with this action. Thereupon the suit was dismissed against Davidson county and the revenue agent, and proceeded against Tamble, county trustee, as sole defendant. He died, and his death was suggested on the record, as well as the fact that Crouch was his successor in office. Plaintiff obtained leave "to withdraw its suit in so far as the same relates to the taxes collected on behalf of Davidson county, leaving the suit to stand alone to recover the taxes, interest, penalty, and costs accruing and paid on account of the taxes claimed on behalf of the state of Tennessee"; and the suit was revived against Crouch. The judgment rendered was in the peculiar form authorized only by the Code, directing a refund from the state treasury.

[1] Defendant urges that by the action of the court upon the demurrer the character of the suit was fixed as one at law against Tamble for his personal tort, that this action abated by Tamble's death, and that it was error to revive the same and give judgment against Crouch. This was its original character, and it may be conceded that abatement, by Tamble's death, would have been a necessary incident; but we think the nature of the suit was modified, and properly so, by the proceedings taken. The declaration made a case for recovery of the state taxes, under section 1061 of Shannon's Code; it also stated a common-law right of action which covered and included this statutory right and more besides. When, later, plaintiff abandoned the remainder of the cause of action and let it stand for the state taxes alone, plaintiff was not stating a new or additional cause of action, but only dropping out and abandoning part of its demand. There was, in the remainder of the claim, nothing inconsistent with the statutory action; and we are satisfied that it was not erroneous to permit the character of the action to be thus modified, and to treat it from that time on as a suit under the statute, and to shape the judgment accordingly.

[2] We are satisfied also that there was no Tennessee statute in existence contemplating or providing for any ad valorem assessment of these cars, and hence it follows that the assessment was without the authority of law and was wholly void. This same question arose in

the court below upon the demurrer; and we adopt, upon this subject, Judge Sanford's opinion, printed in the margin. (See end of opinion.)

[3] It is further urged that the finding of the state board of equalization is a judgment, and that, whether it is right or wrong, the Pullman Company is bound thereby. It is said that the proceeding to "back assess" is not the ordinary assessment and levy of a tax, but it is an inquiry, by a competent tribunal, into the question whether property has escaped taxation and into the value of such property; that this tribunal has power to render judgment for the full amount it finds due; that means are provided for a review of such judgment by an appellate tribunal; but that, like other judgments, it cannot be collaterally attacked. Since the existence of power to levy this tax depended upon whether the property assessed had a taxable situs in Davidson county—at least in part a question of fact—and since a court, giving judgment between parties who are before it, has power to determine its own right to proceed under the facts upon which that right depends, we naturally come to the inquiry whether the state board of equalization is, in this sense, a court. We do not intend to decide that this finding of taxable situs, if made by a court of general jurisdiction, would be conclusive of its own power, but to ascertain first whether that question is here involved.

Chapter 602 of the Acts of 1907, being the Tennessee general assessment law, provides that the state board of equalization shall be composed of the Secretary of State, the Treasurer, and the Comptroller, and that among other powers granted and duties imposed it shall (section 37, par. 11) hear appeals from county trustees upon matters of back assessment. By section 37, par. 10:

"The action of the state board of equalizers shall be final and conclusive as to all matters passed upon by the board. Taxes shall be collected upon the valuation so fixed and found by said board."

The Supreme Court of Tennessee has somewhat casually (Briscoe v. McMillan, 117 Tenn. 131, 100 S. W. 111) referred to the state board as "the state's highest tax court, and a quasi court of record," and said that the question then under consideration had, by its decision, become res judicata. The finding of the state board is by it, and in the subsequent proceedings for enforcement, denominated a "judgment." A writ of certiorari will lie from the state Supreme Court to the board. These things give color to the claim that its findings upon a disputed question of fact or law, where the parties have been before it and their contentions have been fully heard, may be conclusive, even though involving the existence of conditions upon which its power to proceed is dependent.

On the other hand, we find no state decision indicating that any part of the judicial power of the state, as judicial power is properly defined, was vested in this board. The process which is issued pursuant to its finding is not execution, but the ordinary distress warrant regularly issued by an administrative officer. Certiorari is the ordinary common-law writ by which a court reviews the action of an administrative board or executive officer, where such review can be had at all; and so the existence of this remedy does not imply the judicial char-

acter of the board. The right to attack the board's finding collaterally by an equity suit to enjoin is recognized in Tennessee to an extent seemingly beyond what would be permitted as against the action of a court. Briscoe v. McMillan, supra. Upon the whole, we think the state board is to be considered as an administrative body rather than as a part of the judicial system of the state, and that from this standpoint must be considered the effect of its finding that the facts existed which gave it the power and the right to make the assessment in controversy. The findings of such a board may be, for many purposes and to a large extent, conclusive, and yet be far from constituting that judicial decision upon which alone the claim of res judicata may be based. Considered from this standpoint, we approve and adopt Judge Sanford's opinion upon this subject. (See end of this opinion.)

Counsel have elaborately presented many matters of detail which were not discussed by Judge Sanford, and some Tennessee cases not cited by him. It is enough to say of these that we have considered them all, and we do not think they affect the result reached by the court below, or materially impair the force of the reasons given therefor.

The judgment is affirmed, with costs.

NOTE.—The portions of the opinion below, adopted herein, are as follows:

4. Under the allegations of the declaration the back assessment of taxes made by the trustee of Davidson county on the cars of the plaintiff in Davidson County on January 10 of the years in question, were void for the reason that said cars had no taxable situs in said county on said dates, and there was no act of the Tennessee Legislature authorizing their assessment for taxation therein, or providing a method therefor.

It is well settled that the capital stock of an interstate carrier may be taxed by any state through which its lines of business extend, by taking as a basis of assessment such portion of its capital stock as the number of miles of railroad over which its cars are run within the state bear to the whole number of miles in all the states through which its cars run. Pullman Palace Car Co. v. Pennsylvania, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; Western Union Tel. Co. v. Taggart, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; Fargo v. Hart, 193 U. S. 490, 499, 24 Sup. Ct. 498, 48 L. Ed. 761; Kehrer v. Stewart, 197 U. S. 60, 67, 25 Sup. Ct. 403, 49 L. Ed. 663; Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 194, 206, 26 Sup. Ct. 36, 50 L. Ed. 150, 4 Ann. Cas. 493.

And while a state cannot impose a direct tax upon property outside of its jurisdiction belonging to a corporation domiciled elsewhere, it may tax property permanently located within its jurisdiction, although belonging to a corporation domiciled elsewhere and having its actual use only in connection with other parts of a system engaged in interstate commerce. Fargo v. Hart, 193 U. S. 490, 499, 24 Sup. Ct. 498, 48 L. Ed. 761. And where a foreign corporation brings into a state a portion of its movable property to be there used and employed, a tax may not only be properly placed by such state upon the property thus used and employed, so as to impose its fair share of the burden of taxation upon similar property used in like way by the citizen of the state, but where the specific and individual items of property so used and employed are not continuously used, but constantly changing according to the exigencies of the business, such taxation may be fixed by the state by an appraisement of the average amount of the property thus habitually used and employed. American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 82, 19 Sup. Ct. 599, 43 L. Ed. 899.

It is, however, clear that in order that a state may tax such changeable and movable property used by a foreign corporation within its borders it must by some appropriate legislation fix a taxable situs for such property and

provide a method and basis for its assessment. The mere fact that property of a foreign corporation is in a state on a given date does not of itself give it a taxable situs there, when it has not come to rest within the state for a definite time so as to become part of the general mass of property of the state and acquire an actual situs for taxation. See Pittsburg Coal Co. v. Bates, 156 U. S. 577, 588, 15 Sup. Ct. 415, 39 L. Ed. 538; Kelley v. Rhoads, 188 U. S. 1, 7, 23 Sup. Ct. 259, 47 L. Ed. 359; Ayer v. Kentucky, 202 U. S. 409. 421, 26 Sup. Ct. 679, 50 L. Ed. 1082, 6 Ann. Cas. 205.

Upon the point that the tax upon the plaintiff's cars is void unless the State of Tennessee has by an act of Legislature provided for their taxation, the present case is ruled by Marye v. Baltimore & Ohio R. R. Co., 127 U. S. 117, 8 Sup. Ct. 1037, 32 L. Ed. 94, in which it was held that a tax sought to be imposed and collected by the State of Virginia upon movable property, engines and cars, of a Maryland corporation, could not be collected because the State of Virginia had enacted no law applicable to the taxation of such property. The court said: "It is not denied, as it cannot be, that the State of Virginia has rightful power to levy and collect a tax upon such property used and found within its territorial limits, as this property was used and found, if and whenever it may. choose, by apt legislation, to exert its authority over the subject. It is quite true, as the situs of the Baltimore & Ohio Railroad Company is in the State of Maryland, that also, upon general principles, is the situs of all its personal property; but for purposes of taxation, as well as for other purposes, that situs may be fixed in whatever locality the property may be brought and used by its owner by the law of the place where it is found. If the Baltimore & Ohio Railroad Company is permitted by the State of Virginia to bring into its territory and there habitually to use and employ a portion of its movable personal property, and the railroad company chooses so to do, it would certainly be competent and legitimate for the ·state to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon other similar property used in the like way by its own citizens. And such a· tax might be properly assessed and collected in cases like the present where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing, according to the exigencies of the business. In such cases the tax might be fixed by an appraisement and valuation of the average amount of the property thus habitually used, and collected by distraint upon any portion that might at any time be found. * * * But looking at the statute under which the proceeding in question has been taken for the taxation of this property, we think it quite clear that it has no application to the rolling stock owned by the Baltimore and Ohio Railroad Company employed by it in the manner described in the operation of other railroads in Virginia. * * * It follows from this that it was not liable for the payment of the taxes, the collection of which was enjoined by the decree of the Circuit Court."

See also by analogy Mayor v. Alexander, 10 Lea (Tenn.) 476; Franklin County v. Railroad, 12 Lea (Tenn.) 521, 527; Bank v. Memphis, 101 Tenn. 154, 46 S. W. 557; Southern Express Co. v. Patterson, 122 Tenn. 279, 123 S. W. 353; State Board v. Holliday, 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826; Yost v. Transportation Co. (C. C. A., 6 C.) 112 Fed. 746, 50 C. C. A. 511.

In Franklin County v. Railroad, supra, the Supreme Court of Tennessee said: "The choses in action of a corporation, its rolling stock and personal property, according to the principles of the common law, have their situs at the domicile or place of business of the company. Mayor and Aldermen of Gallatin v. Alexander, 10 Lea [Tenn.] 475; Mayor and Aldermen of Nashville v. Thomas, 5 Cold. 607; Cooley on Taxation, 273. But the Legislature may change the situs of such property for purposes of taxation. McLaughlin v. Chadwell, 7 Heisk. [Tenn.] 389, 406; Bedford v. Nashville, 7 Heisk. [Tenn.] 409; State Railroad Tax Cases, 92 U. S. 575, 607, 23 L. Ed. 663; Cooley on Taxation, 274."

In Southern Express Co. v. Patterson, supra, in a case involving the assessment of a tax on the intangible property of a foreign express company, the Supreme Court of Tennessee held that while such property was assessable by

the Legislature, the proceedings under which it was sought to assess it were void because the state law provided no method for its assessment.

In State Board v. Holliday, supra, the court said, speaking in reference to a similar constitutional provision in the State of Indiana: "This constitutional provision" is "a legislative power to select the subjects for taxation" and "imposes the duty and limitation upon the Legislature of providing by law regulations or methods for a just valuation of all property, both real and personal, for taxation. Where the Legislature has not exercised this power, no other department of the state government can supply the omission; and where no such regulation has been prescribed by law as to any particular species of property, then such property cannot be taxed. This conclusion may rest either on the inference from such failure to prescribe such regulations that the Legislature did not intend to select that particular species of property as a subject for taxation, or regardless of the legislative intent the failure to prescribe such regulations leaves such property unselected as a subject for taxation. Riley v. Western Union Tel. Co., 47 Ind. 511; Senour v. Ruth, 140 Ind. 318, 39 N. E. 946; Hyland, Auditor, v. Brazil Block Coal Co., 128 Ind. 335, 26 N. E. 672. The statute must not only provide what property shall be taxed, but it must provide methods for the valuation of such property, and clothe some person, officer, or tribunal with power and authority to assess such valuation; and, if the statute contains no such provisions, it will be insufficient to subject such property to taxation. Riley v. Western Union Tel. Co., supra; Senour v. Ruth, supra."

And in a note on the subject of the taxation of personal property in 56 Am. Dec. 520, it is said, at page 535: "This peculiar property, which has furnished the topic of so much discussion, is held to be situated, in the absence of a special statute, in the town where the principal office of the corporation is; that is, at the corporate residence. Without the help of a statute, it is incapable of acquiring a permanent locality or situs separated from the owner's residence. Mohawk, etc., R. R. Co. v. Clute, 4 Paige [N. Y.] 384; Appeal Tax Court v. Western Md. R. R. Co., 50 Md. 274; Philadelphia, Wilmington, etc., R. R. Co. v. Appeal Tax Court, 50 Md. 397; Appeal Court v. Northern Cent. Ry. Co., 50 Md. 417; Appeal Tax Court v. Pullman Palace Car Co., 50 Md. 452; Kansas City, etc., R. Co., v. Severance, 55 Mo. 378; City of Dubuque v. Illinois Cent. R. R. Co., 39 Iowa, 56; Orange, etc., R. R. Co. v. Alexandria, 58 Va. 176. But it may be provided by statute that such property be taxed in each county at a rate proportional to the length of the road within the county. Cook County v. Chicago, etc., R. R. Co., 35 Ill. 460; Kansas City, etc., R. R. Co. v. Severance, 55 Mo. 378; Richmond, etc., R. R. Co. v. Alamance Commissioners, 84 N. C. 504."

It is clear that the provision of article 2, § 28, of the Constitution of Tennessee requiring all property to be taxed according to its valuation, is not self executing and that the Legislature must provide a method of valuation and assessment before it can be enforced. Bank v. Memphis, supra; Southern Express Co. v. Patterson, supra.

An examination of the assessment acts under which the right to assess the plaintiff's property is claimed, namely, chapter 258 of the Act of 1903, and chapter 602 of the Acts of 1907, discloses no provision for the taxation of property of this character. While these acts provide generally that all property shall be assessed for taxation except such as is excluded in certain specific exemptions, the methods of assessing the tax provided in these acts are only applicable, so far as personal property is concerned, to property having an actual situs in a given county where it can be regularly assessed for taxation. There is no provision whatever in either of these acts fixing a situs for taxation upon movable and transitory property of nonresidents, such as the cars in question not having an actual situs within any given county, or providing any method whatever for its assessment. It is not provided either that such movable property which may happen to be in a given county on the tenth of January shall be assessed in such county, or that an aggregate taxation shall be fixed on an appraisal of the average amount of property thus habitually used and employed, to be apportioned among the several counties through which the cars may be used, or any basis whatever pro-

vided for their taxation. In short, no situs is fixed for the taxation of such movable property of nonresidents and no method for the assessment of the taxes provided by the state.

The fact that such property is not embraced within the provisions of the general assessment law is indicated by the uniform construction given to similar assessment laws for many years, under which, prior to the present time, no effort has been made by the taxing officers to assess taxes on property of this character. State Board v. Holliday, 150 Ind. 216, 229, 49 N. E. 14, 42 L. R. A. 826. And in chapter 48 of the Acts of 1901, p. 71, passed at the same session of the Legislature as the general assessment act of 1901, which was substantially the same as those of 1903 and 1907, while provision was made for the assessment by the railroad commissioner of taxes on railway cars used within the state but owned by nonresidents, "passenger cars" were expressly excluded. Furthermore, if any of the cars sought to be assessed in these proceedings were assessable in Davidson county on the day in question, they could with equal propriety be assessed for taxation on the same day in each of the various counties through which they may have passed. While double or treble taxation may not necessarily be illegal, the fact that a given construction of a statute would result in multiple taxation and injustice, may be considered in arriving at the legislative intention. See Holy Trinity Church v. United States, 143 U. S. 457, 461, 12 Sup. Ct. 511, 36 L. Ed. 226; Lau Ow Bew v. United States, 144 U. S. 47, 59, 12 Sup. Ct. 517, 36 L. Ed. 340; Cumberland Telephone Co. v. Kelly (C. C. A., 6 C.) 160 Fed. 316, 319, 87 C. C. A. 268, 15 Ann. Cas. 1210.

Nor can I regard as correct the conclusion of the Tennessee Board of Equalization that on the facts found by them in reference to the location of the plaintiff's agent at Nashville, the plaintiff had itself fixed a situs for the taxation of its cars at Nashville. It clearly appears that whatever the authority of this agent over the movement of these cars may have been he had never in fact located any of these cars for any definite period at Nashville. In the absence of such situs in fact, their taxable situs must, therefore, as a matter of law, follow the domicile of the owner, unless the State of Tennessee has itself, by appropriate legislation, exercised its right, under the foregoing authorities, of fixing a taxable situs in Tennessee and providing for their taxation. And see Southern Express Co. v. Patterson, supra.

I am hence constrained to conclude that, as on the facts alleged in the declaration and set forth in the findings of the State Board of Equalization, these cars had no actual situs in Davidson county, and as the State of Tennessee, while having the right so to do, has never seen proper to provide for their taxation in any manner, either indirectly, through proportionate taxation of the capital stock of the plaintiff, under the rule laid down in Pullman Palace Car Co. v. Pennsylvania, or by direct taxation of the cars themselves, fixing a situs for such taxation and the method for its assessment, or providing, as it might have done, that in view of the movable character of the property such taxation should be upon an average basis of cars in actual use in Tennessee instead of on specific cars, under the rule laid down in Marye v. Baltimore & O. R. R. Co. and American Transit Co. v. Hall, there was not, during the periods of time for which this tax was sought to be made, any legislation of the State providing for their assessment or authorizing them to be back assessed for such periods by the trustee of Davidson county. Clearly the county trustee has only the authority in this regard conferred upon him by the statutes of the State. Railroad v. Williams, 101 Tenn. 146, 46 S. W. 448. And while it may be true, as urged by counsel for the defendant, that the plaintiff has for many years escaped taxation upon its property in the State from which the State and the county might have derived revenue, yet this omission is a question of legislative policy with which it is beyond the province of the court to deal. This right of taxation never having been made effective by the State by legislation directed to this subject, in the absence of such legislation the court therefore has no alternative except to hold that the back assessment of the taxes in question, being made, without legislative authority, is, upon the facts alleged, void and of no effect.

5. The plaintiff is not prevented from recovering the money paid under protest by reason of the fact that it did not resort to a writ of certiorari and supersedeas to review the action of the State Board of Equalization, and the judgment of that board is not conclusive upon it as res adjudicata.

It may well be that where the state has provided an apt act of the Legislature for the taxation of property, and an appeal is taken by a taxpayer to the State Board of Equalization under the provisions of the law, the judgment of the State Board of Equalization acting in such matter, within the scope of its authority, and in reference to property over whose taxation it has been given jurisdiction, is binding until set aside by the court in a proper proceeding for review by a writ of certiorari; and it is clear that such judgment of the State Board of Equalization is not subject to collateral attack for mere irregularities in its exercise. Smoky Mt. Co. v. Lattimore, 119 Tenn. 620, 105 S. W. 1028.

The present case, however, falls within the rule laid down by the Supreme Court of Tennessee in Briscoe v. McMillan, 117 Tenn. 115, 100 S. W. 111, in which it was held that the failure of the complainant to review an action of the State Board of Equalizers by certiorari would not deprive the Chancery Court of the right to enjoin the certification of the action of the Board of Equalizers in cases where its assessment of taxes was entirely void. The court said on this point: "The next insistence is that complainant's remedy, if any, is in the court of law by certiorari. The bill, however, proceeds upon the idea that the assessment made by the State Board of Equalizers is absolutely void and, if such a case is made by the bill, we think jurisdiction of the Chancery Court is well settled. National Bank of Chattanooga v. Mayor and Alderman, 8 Heisk. (Tenn.) 814; Alexander v. Henderson, 105 Tenn. 431, 58 S. W. 648. It is true Acts 1903, p. 674, c. 258, section 38, subsection 10, expressly provides that the action of the state board 'shall be final and conclusive as to all matters passed upon by the board and taxes shall be collected upon the valuation so fixed and found by the state board.' It will be observed no method is provided by this act by appeal or otherwise for reviewing the action of the state board; but, on the contrary, the act expressly provides that the action of the state board shall be final. Ordinarily this condition would render the remedy by certiorari peculiarly appropriate; but if, as alleged in the bill, the action of the State Board of Equalization is void, then the jurisdiction of a court of equity to prevent the execution of a void judgment is universally recognized. In such a case, it is wholly immaterial that the act provides that the action of the state board shall be final, since such action only relates to the lawful exercise of the jurisdiction of the board, and not to acts which are absolutely void." And see, by analogy, Ward v. Alsup, 100 Tenn. 619, 46 S. W. 573; Railroad v. Williams, 101 Tenn. 146, 46 S. W. 448; Alexander v. Henderson, 105 Tenn. 431, 58 S. W. 648.

The holding in Briscoe v. McMillan is directly applicable to the question now at issue. Under the allegations of the declaration and under the facts found by the State Board of Equalization, as set out therein, the judgment of the Board of Equalization is, in my opinion, entirely void, as matter of law, on account of the want of legislative authority for the assessment of the tax in question upon this class of property. The judgment of the State Board of Equalization, being therefore void for want of authority over the subject-matter of taxation, cannot become binding upon the parties merely because the action of the Board of Equalization has not been reviewed under a writ of certiorari. The rule relied on by the defendants hence does not apply to a case of this character, where it is not sought to correct the action of the board for mere irregularities, but the binding force of its action is contested upon the specific ground that it is entirely void for want of authority.