Express Co. v. Patterson.

SOUTHERN EXPRESS COMPANY *v.* T. E. PATTERSON *et al.*

(*Knoxville,*    September Term, 1909.)

1. **TAXATION.** Void proceedings for back assessment may be perpetually enjoined by property owner.

If a proceeding pending before the county trustee for the back assessment or reassessment of the intangible property of a foreign corporation lawfully doing business in this State, with its domicile in another State, is void, because there is no statute fixing the *situs* of such property in this State, or because there is no statute providing for ascertaining the value and assessment of such property, for taxation in this State, such corporation may invoke the jurisdiction of the chancery court to have the same so declared, and perpetually enjoined. (*Post, pp.* 283-286.)

Case cited and approved: Briscoe v. McMillan, 117 Tenn., 126, 127.

2. **SAME.** Intangible property of a foreign express company having its situs here may be taxed under statute so providing.

The intangible property of a foreign corporation having its *situs* in this State may to that extent be assessed for taxation under a statute so providing.    Express companies own intangible property consisting of franchises, privileges, etc., growing out of the unity of the use of its tangible property, which intangible property may be assessed for taxation, under statutes properly providing therefor, in the several States where the company does business, each State assessing only that part within its jurisdiction; and such assessment is generally made by considering the market value of the stock, bonded indebtedness, and tangible property of the corporation and its gross receipts and net earnings.    (*Post, pp.* 286-292.)

Express Co. v. Patterson.

Cases cited and approved: McLaughlin v. Chadwell, 7 Heisk., 389; Bedford v. Nashville, 7 Heisk., 409; Franklin Co. v. Railroad, 12 Lea, 521; Car Co. v. Pennsylvania, 141 U. S., 18, 22; Adams Express Co. v. Ohio State Auditor, 165 U. S., 221; Express Co. v. Indiana, 165 U. S., 255; Express Co. v. Kentucky, 166 U. S., 171; Refrigerator Co. v. Hall, 174 U. S., 78; New Orleans v. Stempel, 175 U. S., 309; Assessors v. D'Escompte, 191 U. S., 400; Fargo v. Hart, 193 U. S., 490; Insurance Co. v. New Orleans, 205 U. S., 395.

Case cited and distinguished: Grundy Co. v. Railroad, 94 Tenn., 321.

3. **SAME. Constitutional provision for taxation is not self-executing, and legislation is necessary to enforce it.**

The constitutional provision requiring all property, with certain exceptions specified, and with certain exceptions that may be made by the legislature, to be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State and no species of property shall be taxed higher than any other species of property of the same value, is not self-executing, and the legislature must enact laws for its enforcement by legislation which not only includes the property and subjects it to taxation, but also provides a proper mode of valuation and assessment before it can be enforced. (*Post, pp.* 292-294.)

Acts cited and construed: Acts 1903, ch. 258, sec. 1.

Constitution cited and construed: Art. 2, sec. 28.

Cases cited and approved: Railroad v. Williams, 101 Tenn., 146; Bank v. Memphis, 101 Tenn., 158.

4. **SAME. Same. Statute taxing the intangible property of foreign corporations, as express companies doing business in this and other States, must fix its situs and provide a method of assessing.**

Where the only statutory provision made for the assessment of the intangible property of foreign corporations doing business

Express Co. v. Patterson.

in this State and other States, for taxation in this State, is a provision that foreign corporations having branch factories or businesses in this State shall only be assessed on the actual cash value of the corporate property, including therein the franchises and intangible values of the corporation in this State, the intangible property of a foreign express company doing business in this State and in other States cannot be assessed and taxed thereunder, because the statute does not fix the *situs* of the intangible property of such foreign corporations, or provide a method for valuing and assessing the same for taxation. (*Post, pp.* 294-302.)

Acts cited and construed: Acts 1903, ch. 258, secs. 1, 22, 23, 24.

5. **SAME.** "Principal office or place of business" of a corporation is its domicile which is defined.

The "principal office or place of business" of a corporation, especially in connection with the taxation of its property at such place, means its domicile, which is the place where its governing power resides and is exercised, and not the place where its ordinary business is conducted; and under our statutes, residence or domicile of a corporation is the county where its charter is registered in compliance with our statute providing for the creation of corporations, but this provision has no application to foreign corporations. (*Post, pp.* 283, 300, 301.)

Acts cited and construed: Acts 1903, ch. 258, sec. 24.

Case cited and approved: Grundy Co. v. Railroad, 94 Tenn., 308.

6. **SAME.** Legislative intention not to tax the intangible property of foreign express companies doing business in the State and other States evidenced by other legislation for taxation.

In view of the legislative policy of the State as to taxation of the intangible property of certain quasi public corporations, as evidenced by the fact that the property of railroad companies, telegraph companies, and telephone companies is assessed by the railroad commissioners, acting as assessors under Acts 1897, ch. 5, under which the proportionate part of the taxes

collected is distributed to all the towns, cities, and counties in which the property is located, or business is done, it is evident that it was not the legislative intention, under Acts 1903, ch. 258, secs. 22, 23, and 24, to assess and tax the intangible property of such foreign corporations as express companies doing business in this State and other States. (*Post, pp.* 301, 302.)

Acts cited and construed: Acts 1897, ch. 5; Acts 1903, ch. 258, secs. 22, 23, and 24.

7. **SAME.** Intangible property of a foreign corporation is not taxable in one county only, but proportionately in all counties in which it exists.

The county trustee of one county would have no authority to assess the entire value of the intangible property of a foreign corporation, as an express company, doing business in the various counties of this State and in other States, if a method for ascertaining and assessing its value was provided by statute; but the portion in each and every county would be there assessable. (*Post, pp.* 301, 302.)

FROM HAMILTON.

Appeal from the Chancery Court of Hamilton County.—T. M. MCCONNELL, Chancellor.

COLEMAN & FRIERSON, for complainant.

BROWN & SPURLOCK and CHAMBLISS & CHAMBLISS, for defendants.

MR. JUSTICE SHIELDS delivered the opinion of the Court.

The bill in this case was brought in the chancery court of Hamilton county by the Southern Express Company, a foreign corporation having its domicile in the city of Atlanta, Ga., against T. E. Patterson, who is sued as trustee of Hamilton county, and A. S. Birdsong, who is sued as revenue agent of the State of Tennessee, to enjoin a proceeding begun by A. S. Birdsong, as revenue agent, before T. E. Patterson, trustee to back-assess the intangible property of complainant situated in Tennessee, for the years 1903, 1904, 1905, and 1906. The case was heard by the chancellor upon bill and answer and the facts as agreed upon by the parties and the bill dismissed. The complainant has appealed to this court, and assigns errors.

The facts disclosed by the record are as follows:

Complainant is a corporation under the laws of the State of Georgia, having its principal office or place of business and domicile in that State, where it holds its regular meetings of stockholders in accordance with the laws of that State, and it is not authorized by its charter or by-laws to hold these meetings in any other State. It has complied with the laws of Tennessee prescribing the terms upon which foreign corporations may do business in this State.

It is an express company, carrying on and conducting its business in Georgia, Tennessee, and several other States of the Union, as a common carrier. It owns no transportation lines, cars, or engines, but does its business upon cars and over the lines of railroad companies

for a consideration paid to them.  Its business is to thus transport such packages, money, and other valuables and freights as may be intrusted to it for carriage, and has in Hamilton county and many other counties of this State, offices, agents, furniture, drays, and horses, used in the conduct and operation of this business.  It also has in Hamilton county offices where its entire general auditing and accounting business is done.  All of the tangible property of the company, real and personal, in Hamilton county, was there duly assessed for taxation for the several years involved, and the taxes paid.  There is no complaint of the assessment of this property, and the proceeding attacked does not in any way involve it.

The notice served upon complainant, requiring it to appear before said Patterson, states the object of the proceeding to be "for the purpose of being assessed for the years 1903, 1904, 1905, and 1906, upon omitted or inadequately assessed property in said county and State, and to show cause, if any, why said property should not be back or reassessed at its actual cash value."  When the complainant appeared in response to this notice, the object of the proceeding was more definitely stated by the counsel for A. S. Birdsong, revenue agent, in these words:

"This proceeding is based upon information that the intangible assets and franchises of the above defendant have been omitted from taxation, or not assessed, or inadequately assessed, in the above State and county,

and there is no information in possession of said revenue agent to the effect that the tangible property of defendant is improperly assessed. Therefore the purpose of this proceeding is to limit the inquiry to intangible assets."

Counsel for revenue agent, for the purpose of ascertaining the intangible assets sought to be assessed and the value of the same, submitted to the officials of the complainant company interrogatories calling for a detailed statement of the capital stock of the company, its bonded indebtedness, the value of its stock and bonds, value of all of its tangible property, gross receipts in Tennessee and other States, dividends paid, and other facts tending to disclose its intangible property and its value.

The defendant, T. E. Patterson, ordered that these interrogatories be answered. Thereupon complainant filed this bill to enjoin the proceeding to reassess its property.

The contention of the complainant is that T. E. Patterson, as trustee of Hamilton county, has no authority or jurisdiction to assess its intangible property, and that said proceeding before him is absolutely void, because:

(1) Complainant is a foreign corporation having its domicile in the State of Georgia, and there is the *situs* of its intangible property, there being no statute of Tennessee fixing it in this State; therefore it is not within the jurisdiction of Tennessee, and cannot be here assessed and taxed.

(2)   That the general assembly of Tennessee has not by law provided for ascertaining the value and assess-ment for taxation, of the intangible property of foreign corporations doing business in Tennessee, and that, al-though said property may be subject to taxation in this State, until such provision is made by the legislature, it cannot be done.

If the proceeding pending before T. E. Patterson, trustee, is void for either of these reasons, complainant may invoke the jurisdiction of the chancery court to have the same so declared, and perpetually enjoined. *Briscoe* v. *McMillan,* 117 Tenn., 126, 127, 100 S. W., 111.

The general assessment law of Tennessee, under which the proceeding before T. E. Patterson was insti-tuted, is to be found in chapter 258, p. 632, Acts 1903. We will hereafter state the sections of this act relied upon as authority for the assessment of complainant's property.

The property of the complainant sought to be as-sessed in the proceeding attacked is its intangible prop-erty, having its *situs* in Tennessee, growing out of the unity of use of its tangible property.  There is no doubt of the existence of this character of property, and that it, like all other property in the State, is subject to tax-ation.   In a number of States the legislatures have es-tablished boards for the valuation and assessment of it. It is no objection to its taxation that it is situated in more than one State, if the assessment be so made in

the particular State as to exclude that having its *situs* in other States. It is generally arrived at by taking into consideration the market value of the stock, bonded indebtedness, and tangible property of the corporation, and its gross receipts and net earnings. It is well settled that express companies have such intangible property, and that it may be assessed in the several States where the company does business; each State assessing that only within its jurisdiction. Legislation enacted in several of the States for this purpose has been sustained by the courts of the States enacting it, and, on proceedings in error, by the supreme court of the United States. The nature of this intangible property and its *situs* will best be understood by referring to some of the decisions of those courts.

In *Adams Express Company* v. *Ohio State Auditor*, and other cases heard therewith, 165 U. S., 221, 17 Sup. Ct., 309, 41 L. Ed., 683, it is said:

"Doubtless there is a distinction between property of railroad and telegraph companies and that of express companies. The physical unity existing in the former is lacking in the latter; but there is the same unity in the use of the entire property for the specific purpose, and there are the same elements of value arising from such use. The cars of the Pullman Company do not constitute a physical unity, and their value as separate cars do not bear a direct relation to the valuation which was sustained in that case. The cars were moved by railway companies under contract, and the taxation of

the corporation in Pennsylvania was sustained on the theory that the whole property of the company might be regarded as a unit plant, with a unit value, a proportionate part of which value may be reached by the State authorities on the basis indicated. No more reason is perceived for limiting the valuation of the property of express companies to horses, wagons, and furniture than that of railroad and telegraph companies and sleeping car companies to roadbed, rails and ties, poles and wires, or cars. That unit is a unit of the use and management, and the horses, wagons, safes, pouches, and furniture, the contract for transportation facilities, the capital necessary to carry on the business—whether represented in tangible or intangible property—in Ohio possessed the value in combination and from use in connection with the property and capital elsewhere, which could as rightfully be recognized in the assessment for taxation in the instance of these companies as the others.

"We repeat that while the unit which exists may not be a physical unit, it is something more than a mere unit of ownership. It is a unit of use, not simply for the convenience or pecuniary profit of the owner, but existing in the very necessities of the case, resulting from the very nature of the business. . . . The property of the express company, distributed through different States, is an essential condition of the business. United in a single specific use, it constitutes but a single plant,

made so by the very character and necessities of the business."

These cases were before the court on a petition to rehear, and, after being again elaborately argued, the court, in adhering to the former decision, through Mr. Justice Brewer, said:

"But where is the *situs* of this intangible property? The Adams Express Company has, according to its showing, in round numbers $4,000,000 of tangible property scattered through different States, and with that tangible property thus scattered transacts its business. By the business which it transacts by combining into a single use all these separate pieces and articles of tangible property, by the contracts, franchises, and privileges which it has acquired and possesses, it has created a corporate property of actual value of $16,000,-000. Thus, according to its figures, this intangible property, its franchises, privileges, etc., is of the value of $12,000,000, and its tangible property of only $4,-000,000. Where is the *situs* of this intangible property? It is simply where its home office is, where is found the central directing thought which controls the workings of the great machine, or in the State which gave it its corporate franchise. Or is that intangible property distributed wherever its tangible property is located and its work is done? Clearly, as we think, the latter. Every State within which it is transacting business and where it has its property, more or less, may rightfully say that the $16,000,000 that it possesses

springs, not merely from the original grant of corporate power by the State which incorporated it, or from the mere ownership of the tangible property, but it springs from the fact that that tangible property it has combined with contracts, franchises, and privileges into a single unit of property, and this State contributes to that aggregate value, not merely the separate value of such tangible property as is within its limits, but its proportionate share of the value of the entire property. That this is true is obvious from the result that would follow if all the States other than the one which created the corporation could and should withhold from it the right to transact express business within their limits. It might continue to own all its tangible property within each of those States; but, unable to transact the express business within their limits, that $12,000,000 of value attributable to its intangible property would shrivel to a mere trifle.

"It may be true that the principal office of the corporation is in New York, and that for certain purposes the maxim of the common law was, '*Mobilia personam sequuntur.*' But that maxim was never of universal application, and seldom interfered with the right of taxation. *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S., 18, 22, 11 Sup. Ct., 876, 35 L. Ed., 613, 616, 3 Interest. Com. R., 595.

"In conclusion, let us say that this is eminently a practical age; that courts must recognize things as they are, and as possessing a value which is accorded

to them in the markets of the world; and that no fine-spun theories about *situs* should interfere to enable these large corporations, whose business is carried on through many States, to escape from bearing in each State such burden of taxation as a fair distribution of the actual value of their property among those States requires."

Other cases to the same effect: *American Express Company* v. *State of Indiana,* 165 U. S., 255, 17 Sup. Ct., 991, 41 L. Ed., 707; *Adams Express Company* v. *Kentucky,* 166 U. S., 171, 17 Sup. Ct., 527, 41 L. Ed., 960; *Fargo* v. *Hart,* 193 U. S., 490, 24 Sup. Ct., 498, 48 L. Ed., 761; *American Refrigerator Company* v. *Hall,* 174 U. S., 78, 19 Sup. Ct., 599, 43 L. Ed., 899; *State Board of Assessors* v. *Comptoir Nationale d'Escompte,* 191 U. S., 400, 24 Sup. Ct., 109, 48 L. Ed., 232; *City of New Orleans* v. *Stempel,* 175 U. S., 309, 20 Sup. Ct., 110, 44 L. Ed., 174; *Metropolitan Life Ins. Company* v. *New Orleans,* 205 U. S., 395, 27 Sup. Ct., 499, 51 L. Ed., 853.

The case of *Grundy County* v. *T. C., I & R. R. Co.,* 94 Tenn., 321, 29 S. W., 116, is not in conflict with the above cases in relation to the *situs* of property. While it was there held that the *situs* of intangible assets and other personal property was at the domicile of the corporation, yet it was because the statutes then in force fixed this domicile or directed it to be assessed else-where. On the contrary, it is well settled in this State that the *situs* of personal property, inclusive of intangi-

ble assets, for the purpose of taxation, is within control of the legislature, and may be fixed by it. *McLaughlin* v. *Chadwell,* 7 Heisk., 389; *Bedford* v. *Nashville,* 7 Heisk., 409; *Franklin County* v. *R. R. Co.,* 12 Lea, 521.

Thus it is well established that corporations of the character of the complainant have intangible values, which are property in a commercial sense and subject to taxation along with other property, real, personal, and mixed, and that, where the corporation carries on and conducts its business in another State than that under the laws of which it has its domicile, the *situs* of that particular part of these intangible values which is created and grows out of the business, the good will, of the company in such State, is there, and subject to assessment and taxation under the laws of that State.

The constitution of Tennessee (article 2, section 28) ordains that "all property, real, personal or mixed, shall be taxed," with authority in the general assembly to except that held by the State, counties, cities, and towns for the public purposes, and that used solely for religious, charitable, scientific, literary, or educational purposes, and "except one thousand dollars worth of personal property in the hands of each taxpayer, and the direct products of the soil in the hands of the producer and his immediate vendee." This section further provides that "all property shall be taxed according to its value, that value to be ascertained in such manner as the legislature shall direct, so that taxes shall be equal and uniform throughout the State. No one

species of property from which a tax may be collected shall be taxed higher than any other species of property of the same value."

This provision, however, is not self-executing, and the legislature must enact laws for its enforcement.

The first section of chapter 258, p. 632, Acts 1903, under which the proceeding before T. E. Patterson was instituted, enacts "that all property, real, personal and mixed, shall be assessed for taxation for State, county and municipal purposes, except such as is declared exempt in the next section."

This includes the intangible property of all corporations, and subjects it to taxation; but this is not sufficient. The requirement that the legislature provide a mode for the ascertainment of the value of property— the assessment of it—so that it may be assessed according to its value, and that the taxes collected from it be equal and uniform with those assessed upon other property of the same value, is equally mandatory, and before any property can be valued and assessed for taxation a proper method and machinery for such valuation and assessment must be provided. *Bank* v. *Memphis,* 101 Tenn., 158, 46 S. W., 557; *Railroad Co.* v. *Williams,* 101 Tenn., 146, 46 S. W., 448.

The defendant, T. E. Patterson, claims that chapter 258, sections 22, 23, 24, Acts 1903, provide for the valuation and assessment of the intangible property of complainant, for taxation, and that he is, as trustee of Hamilton county, authorized to make the assessment.

If this contention is not well made, then there is no law providing for the assessment of this property, and the defendant has no authority to assess it for taxation.

We are of the opinion that this statute does not provide a method for the assessment of the intangible assets of the complainant.

Section 22 is in these words:

"Sec. 22. That every quasi public corporation doing business and being operated in this State, such as gas works, water works, electric light, street railroad and dummy railroad companies, and all other corporations public in their character, and which possess rights, franchises, privileges, shall pay an ad valorem tax upon the actual cash value of its corporate property, including its franchises, easements, incorporeal rights, and privileges, and all other corporate property, which said value shall not be assessed at less than the aggregate actual cash value of both its shares of stock and bonded debt, and which said value shall be computed by looking to and considering the market value, and if no market value, the actual value of such stocks and bonds to the corporation; provided, however, that the assessment and taxation of said corporate property or capital stock shall be in lieu of any assessment or taxation of the shares of stock or bonds, either to the corporation or the owners thereof; and, provided, also, that the assessed value of the corporate realty and tangible personalty otherwise assessed shall be deducted in making the assessment from the value of the corporate property or

capital stock.   Real estate and tangible personalty of any corporation defined in this section shall be assessed in the same mode and manner, and where situate, as other real estate and tangible personalty.   In computing the value of and assessing corporate property or capital stock under this section, the assessed value of real estate and tangible personalty shall be deducted from the aggregate actual cash value of the corporate property or capital stock, and the remainder shall constitute the value upon which the assessment shall be based.   The value of the capital stock or corporate property, as used in this section, shall be construed as including all tangible and intangible and franchise values.   All corporations, foreign or domestic, other than those hereinbefore designated in this section and in the proviso to this clause, shall be assessed in the same mode and manner as quasi public corporations, set out in this section; provided, however, this section shall not be construed as including railroad, telegraph, telephone, building and loan, insurance, manufacturing, banking companies or corporations, as are set out in sections 23 and 25 of this act, the assessment of such companies or corporations being otherwise provided for in this and in said sections.

"For the purpose of assessing quasi public and other corporate property defined in this section, the president, or chief officer in charge of and operating the business, shall fill out and furnish to the assessor, under oath and in writing, an assessment schedule (to be returned by

the assessor to the county court clerk for preservation), which schedule shall contain the following questions, viz.:

"(1) The amount of stock authorized, the number of shares into which such stock is divided, and the amount of stock paid up, and the number of shares issued.

"(2) The market value, and if no market value, the actual value of such shares of stock, and what the same can be sold for on the market.

"(3) The amount of the outstanding, bonded debt, if any, the rate of interest borne by the same, and whether the interest is paid or in default.

"(4) The market value, if any, and if no market value, the actual value of such bonded debt.

"(5) What dividends have been paid on stock in the last two years, and what surplus, if any, on hand.

"(6) An itemized statement of all the tangible personal property in each county, district, or ward, where the same is situate, and the assessed value of each item, and an itemized statement of all real property, where the same is situate, and the assessed value of each item, and a certified copy, as set out in section 24 of this act.

"(7) An itemized statement of all stocks and bonds, securities, notes, accounts, and choses in action owned or held, whether the same be unincumbered or transferred or deposited, or used as collateral, wherever the same may be situate, and also all moneys on hand, or on deposit, wherever the same may be situated.

"(8)   Such other facts pertaining to the value of the property as may be demanded or deemed necessary or material by the assessor.    The assessor shall, in the premises have full power and authority to examine witnesses; to inspect or require the production of books or papers; to obtain and consider any evidence other than that contained in said statement that he may deem material or necessary.    The assessor shall visit and inspect the property whenever practicable, inform himself as to the value of same, obtain all necessary or material evidence of the value of the property, and of the shares of stock, and of the bonded debt, either from the statement required in this act or from such other sources as he may deem proper or necessary."

This section applies exclusively to corporations, domestic and foreign, conducting their entire business in one county of this State. This appears almost in express terms, and is clearly implied.    It is obvious that the clauses providing that all the property of corporations of every kind and description, tangible and intangible, shall be valued and assessed, necessarily exclude corporations doing business and operating in other States, because the tangible and intangible property belonging to them in such other States is beyond the jurisdiction of the State of Tennessee, and cannot be taxed by it.

This is also the intention of section 23, which is confined to the assessment of the property of manufacturing corporations, and contains practically the same provisions for the assessment of all the tangible and intangible property of that class of corporations.

What is conclusive, however, that these two sections, 22 and 23, do not apply to corporations doing business or having property in other States of an intangible character, is that section 24 expressly undertakes to provide for the assessment of the property of those corporations. The first paragraph of this section is in these words, viz.:

"Sec. 24. That when any corporation, foreign or domestic, defined in sections 22 and 23 of this act, owns property in this and another State, or in more than one county in this State, or in more than one civil district in any county, the capital stock or corporate property of the corporation shall, except as hereinbefore provided in this section as to foreign corporations, be assessed in the county, or place, or civil district, fixed in its charter for the meeting of its stockholders, and in case such place of meeting is not fixed in its charter, then in the county, or place, or civil district where the principal office or place of business of the corporation is located, which said assessment shall be made in the following manner, viz.:

"The assessor shall compute the value of the capital stock or corporate property at not less than its aggregate actual cash value, and deduct therefrom the assessed value of all real estate and tangible personal property, as hereinbefore set out, wherever the same may be situate, and the remainder shall constitute the assessable value of the corporate property or capital stock at the place of assessment. Tangible personal property and realty of such corporation shall be as-

sessed at the place or in the district where the same is situate at the time of the assessment, and by the proper authority at that place designated by the law. The assessed value of such real and tangible personalty shall be verified by a properly certified copy from the assessment rolls or lists which said certified copy shall accompany the statement hereinbefore required, and be likewise returned by the assessor to the county court clerk for preservation."

This paragraph provides for the assessment of the property of domestic corporations having property in more than one State, county, or civil district in this State, and fixes the *situs* of such property and the place for its assessment in the civil district and county fixed in the charter of the corporation for the meeting of its stockholders, and in the absence of the place being so fixed, then in the place, civil district, or county where the "principal office or place of business of the corporation is located."

Foreign corporations are here expressly excluded, and are provided for in a subsequent paragraph, which is in these words, viz.:

"Foreign corporations mentioned in sections 22 and 23, having branch factories or business in this State, shall only be assessed on the actual cash value of the corporate property in this State; provided, however, the franchise and intangible values of the corporation in this State shall be included in the valuation of the corporate property in the State."

This paragraph is the only one which relates to the assessment of the intangible assets of foreign corporations doing business in this and other States, and it contains no provision fixing the *situs* of the intangible assets of such corporations, or a method for ascertaining their value and assessing them for taxation, and thus fails to accomplish its purpose.

The contention of the defendant that the *situs* of the intangible property of complainant is in Hamilton county and that he has authority to assess it is predicated upon the provisions of the first paragraph of section 24, to the effect that corporations, having property, in more than one county or State, of this character, shall be assessed in the county fixed in the charter for the meeting of the stockholders, and, if no county be so fixed, then in that where the principal office or place of business of the corporation is located.

It is conceded that complainant's charter does not fix Hamilton county as the place for the meeting of its stockholders; but it is insisted that its principal office or place of business in this State is in that county, because it there has its auditing department, and all other counties it has only its usual offices for conducting its business of transportation. If this paragraph applied to foreign corporations, this contention would be unsound. The term "principal office or place of business" means, especially in connection with taxation, the domicile of the corporation. *Grundy County* v. *T. C. I. Railroad Co.,* 94 Tenn., 308, 29 S. W., 116.

The residence or domicile of a corporation under our statute is the county where the charter is registered in compliance with our statutes providing for the creation of corporations; and it is the place where the governing power of the corporation resides and is exercised, and not the place where its ordinary business is conducted. Desty on Taxation, vol. 1, p. 341.

But, as we have seen, this provision has no application to foreign corporations.

The legislature having failed to fix the *situs* of the intangible property of foreign corporations growing out of business done and property owned by them in more than one county in this State, it is to be found in all of the counties where this property and business is located and carried on. The trustee of Hamilton county would have no authority to assess the entire value of the intangible property of the complainant in that county, if a method for ascertaining and assessing its value was provided by the statute; but the portion in each and every county would there be assessable. But, in the absence of a method provided for ascertaining its value, it cannot be assessed anywhere. The remedy is not in the courts, but with the legislature.

We are also of the opinion that, so far as complainant is concerned, it was not the intention of the legislature to provide in sections 22, 23, and 24 of chapter 258 of the Acts of 1903 for the assessment of its intangible property. The policy of the State has been to assess this character of property of corporations of this

class in an entirely different manner and by different officers. The property of railroad companies, telegraph companies, and telephone companies is assessed by the railroad commissioners, acting as assessors under chapter 5, p. 102, of the Acts of 1897, which provides a method for assessment whereby the tax collected is distributed so as to allow all the towns, cities, and counties in which the property is located their proportionate portion. We cannot see any reason why, in the assessment and taxation of the property of express companies, discrimination should be made, against them, or the several municipalities and counties in which they do business, and it is evident that it was not the intention of the legislature that it should be done.

We are therefore of the opinion, and hold, that the defendant, T. E. Patterson, as trustee of Hamilton county, has no power to assess the intangible property of complainant for taxation in that county, and that the proceeding which was being conducted before him for that purpose was unauthorized and should be perpetually enjoined.

Therefore the decree of the chancellor dismissing complainant's bill will be reversed, and a decree here entered in accordance with this opinion.