### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

### ' WESTERN DIVISION. '

### JACKSON, APRIL TERM, 1919.

. CITY OF MEMPHIS *v.* MARY MARTIN HILL.

*(Jackson,* April Term, 1919.) '

1. **STATUTES. Knowledge of legislature. Presumption.**

In adopting a plan or scheme by which the city of Memphis should proceed in its local improvements, with attendant assessments for the benefits accruing, it is to be presumed that the legislature was aware of those methods of special assessments constantly adopted and generally in operation throughtout the States of the Union. (*Post,* pp. 255, 256.)

Acts cited and construed: Acts 1907, ch. 341; Acts 1909, ch. 109; Acts 1913, ch. 244.

2. **MUNICIPAL CORPORATIONS. Improvements. Assessments. Statutes. Strict construction.**

The purpose of Acts 1907, chapter 341, as amended by Acts 1909, chapter 109, and Priv. Acts 1913, chapter 244, constituting the abutting property law for the city of Memphis being to provide for a species of taxation,. its intendment must be strictly construed against the power and in favor of the citizen affected. (*Post,* pp. 256-260.)

[141 Tenn.

City of Memphis v. Hill.

3. **MUNICIPAL CORPORATIONS.** Street improvements. Assessments. Front-foot rule.

Under Acts 1907, chapter 341, as amended by Acts 1909, chapter 109, and Private Acts 1913, chapter 244, the city of Memphis in levying special assessment is authorized to proceed solely against property abutting the street or part of the street to be improved, and assessments are to be made by the front-foot rule. (*Post, pp.* 256-260.)

Cases cited and approved: Memphis v. Bing, 94 Tenn., 644; Chattanooga v. Raulston, 117 Tenn., 569; Scovill v. City of Cleveland, 1 Ohio St., 126; Northern Indiana R. R. Co. v. Connelly, 10 Ohio St., 159; Kendig v. Knight, 60 Iowa, 29; City of St. Louis v. Juppier, 3 S. W. (Mo.), 401; In re. Morewood Avenue, 159 Pa., 20; In re 54th Street, 165 Pa., 8; Ryan v. Town of Sumner, 17 Wash., 228.

4. **MUNICIPAL CORPORATIONS.** Street improvements. Assessment. Property subject.

Where an assessment in proportion to frontage is the mode prescribed by the legislature, property remote from the actual improvement and property not abutting upon the improvement is not subject to assessment. (*Post, pp.* 260, 261.)

Cases cited and approved: Roberts v. City of Evanston, 218 Ill., 296; Shurtleff v. Chicago, 190 Ill., 473; Langlois v. Cameron, 201 Ill., 301; Chillicothe v. Henry, 136 Mo. App., 468; City of Cincinnati v. Batsche, 52 Ohio St., 324; Wilbur v. Springfield, 123 Ill., 395; Barber Asphalt Paving Co. v. Kiene, 99 Mo. App., 528; City of Springfield v. Green, 120 Ill., 269.

5. **MUNICIPAL CORPORATIONS.** Assessments. Benefits. Nonabutting property.

That the property of respondent or other property adjacent to the improvement is benefited by the same, and in the same manner, and to the same extent, as property abutting immediately upon the improvement, affords no reason for a construction of Acts 1907, chapter 341, as amended by Acts 1909, chapter 109 (Private Acts 1913, chapter 244), which is not clearly comprehended by its terms. (*Post, pp.* 261-264.)

Cases cited and approved: Bank v. Memphis, 101 Tenn., 158; Railroad Co. v. Williams, 101 Tenn., 146; Harriman v. Yonkers, 181 N. Y., 27,

Cases cited and distinguished: Express Co. v. Patterson, 122 Tenn., 293; Halpin v. Campbell, 71 Mo. 493.

FROM SHELBY.

Appeal from the Circuit Court of Shelly County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court—HON. A. B. PITTMAN, Judge.

GATES & MARTIN, for Mary Martin Hill.

H. J. LIVINGSTON and C. M. BRYAN, for City of Memphis.

MR. JUSTICE BACHMAN, delivered the opinion of the Court.

Mrs. Mary Martin Hill, the respondent herein, is the owner of six lots of land, aggregating some six hundred feet frontage, abutting on North and South, Third street, between Adams and Union avenues, in the city of Memphis. In August, 1912, by appropriate action of the city authorities, Third street between Adams and Union avenues was created an improvement district, and for the improvements then made the property, abutting thereon was assessed at the rate of $5.36 per front foot, Mrs. Hill paying as her proportionate share the sum of $3,255.44. North and South Third street extends southwardly from Chelsea avenue to Adams avenue and there terminates. Rayburn boulevard extends northwardly from Calhoun

avenue to Beale avenue, there ending at a point some one thousand, one hundred feet from and almost directly south of the southern terminus of North and South Third street. There exists no street through the one thousand, one hundred feet separating North and South Third street and Rayburn boulevard. Desiring to extend Third street southwardly beyond Union avenue and though the intervening property to connect with Rayburn boulevard, thus making of Third street a continuous thoroughfare, the city of Memphis in September, 1917, finally passed improvement ordinance No. 374, which created an improvement district, embracing North and South Third street between Adams and Union avenues, the new street to be opened between Union and Beale avenues and Rayburn boulevard between Beale and Calhoun avenues. It was not contemplated that there should be any physical improvement of that part of North and South Third street between Adams and Union avenues, upon which the property of respondent abuts, the same being in good, serviceable condition, but to defray the expense of opening up the new street contemplated, acquiring the necessary property, removing buildings, drainage, and paving, an assessment was ordered on all abutting property within the limits of the prescribed district, the maximum rate per front foot estimated to be $6.79. Before final confirmation of the ordinance authorizing the improvements Mrs. Hill, by counsel, appeared before the board of commissioners and protested the same, challenging its legality upon grounds dealings with the right of the city to make the proposed assessments upon her property, no question being made as to the correctness of the

procedure in the passage of the ordinance. Her protest having been overruled, the proceedings of the board of commissioners were reviewed in the circuit court upon petition for *certiorari* where the petition was dismissed, the judgment of the circuit judge being accompanied by a finding of law and fact which succinctly states the controversy.

In addition to the facts heretofore stated, it was found by the circuit judge that the council had due authority to pass the ordinance in question; that in providing for the assessments to be made thereunder it had approximated as nearly as possible the property obviously benefited; that, while other property not included in the district would be benefited, the proposed improvement would materially enhance the value of all property within the limits of the district; and that the enhancement in value of each particular piece of abutting property would materially exceed the amount of the assessment ordered upon it.

Upon appeal to the court of civil appeals the judgment of the circuit court was reversed and the case is before us upon petition by the city of Memphis for writs of *certiorari*.

In the able and exhaustive briefs of counsel there are presented fundamental questions going to the validity of special assessments for local benefits upon which there now exists little divergence of authority, and it is not our purpose to discuss those principles of special assessments underlying and necessary to the validity of such assessments generally, but which, in our view of this case, are not involved in its determination.

The authority of the legislature to empower the city of Memphis to proceed with the extension and improve-

ment of its streets, and to provide for the cost thereof, by assessments on the property benefited, is not open to question. That the legislature could in its discretion have adopted one or more of several modes of establishing the proper correlation between such assessments and the benefits conferred is well settled.

In the determination of the case we are not concerned with what powers might have been conferred upon the city of Memphis authorizing the levying or proportionate assessments for the improvements of its streets but rather what mode of procedure for the equitable distribution of such burdens has actually been designated as proper and suitable. Following the determination of this question, it is to be seen whether or not the proceedings herein considered come within the delegated method.

In adopting a plan or scheme by which the city of Memphis should proceed in its local improvements, with attendant assessments for the benefits accruing, it is to be assumed that the legislature was aware of those methods of special assessments constantly adopted and generally in operation throughout the States of the Union. Certainly it was aware of two predominant plans, viz. by the front-foot method, and assessments in proportion to benefits had, both recognized as securing under differing conditions, the most approximate measurement of assessments and benefits. The authority to levy the special assessments complained of upon the property of respondent, if found to exist, is contained in chapter 341 of the Acts of 1907, as amended by chapter 109 of the Acts of 1909, and chapter 244 of the

Private Acts of 1913, the several acts together constituting the abutting property law for the city of Memphis.

The purpose and authority of the original act (chapter 341 of the Acts of 1907), as expressed in its caption, is as follows:

"An act to empower municipalities having a population exceeding 100,000 inhabitants by the federal census of 1900 or any subsequent federal census to open, extend, widen, grade, pave, macadamize, or otherwise improve streets, alleys, and highways; to levy and collect special taxes and local contributions on real estate abutting the same; to authorize the issuance of certificates of indebtedness to pay for the same; to provide for the redemption of such certificate; and to authorize the creation of improvement districts."

Having in mind that the purpose of the original act, with its amendments, is to provide for a species of taxation, and that, in accord with the recognized rules of construction, its intendments must be strictly construed against the power and in favor of the citizen affected (*Memphis* v. *Bing,* 94 Tenn., 644, 30 S. W., 745; *Chattanooga* v. *Raulston,* 117 Tenn., 569, 97 S. W., 456), we are of opinion that in the levying of special assessments the city is authorized to proceed solely against property abutting the street or part of the street to be improved, and that the assessments are to be made by the front-foot rule. An examination of the language and terms constantly recurring throughout the acts admits of no other conclusion.

To empower municipalities to open or otherwise improve streets; to levy and collect special taxes . . . on real estate abutting the same—so reads the caption

of the original act. In each and every instance throughout the several provisions of the acts, where it is sought to designate or describe the property to be specially assessed, the language is practically identical.

Section 1 of the Acts of 1907 provided that upon a petition signed by the owner or owners of sixty per cent. of the frontage of the lots or parcels of land abutting on such portion of any street, highway, or alley, as set out in the petition, within the corporate limits of such municipality, the legislative body was authorized to provide for the improvement of such street, and the making of special levies or assessments upon the lands abutting on such street, highway, or alley to be improved.

It is provided in section 3 that before any work shall be done or public improvement authorized, the cost of which is proposed to be assessed against the property abutting on said street, highway, or alley to be improved, it is the duty of the legislative body to adopt an ordinance stating the general character of improvement, and to name the location and terminal points thereof, and the streets, alleys, or other highways or parts thereof along which it is to be constructed.

The amendatory acts of 1909 and 1913 in no wise enlarge the purview of the original act, in so far as the property to be assessed or mode of assessment is concerned.

It is in section 5 of the original act that the designation of property subject to assessment and the manner of levying the same is perhaps most clearly expressed. The clear import of the language is simply that the properties abutting the street or part of the street im-

proved shall be assessed according to their respective frontages.

We can find in the enactment authority for the assessment of no other property than that abutting the street improved or the part of a street improved; in other words, property abutting the improvement sought to be made. As is well expressed in *Scovill* v. *City of Cleveland,* 1 Ohio St., 126, and approved in *Northern Indiana R. R. Co.* v. *Connelly,* 10 Ohio St., 159, where the authority of the city was "to levy a special tax, to defray the expense of grading, paving or otherwise improving any road, street," etc., "by a discriminating assessment upon the land and ground abounding and abutting upon such road," etc., "or near thereto, in proportion to the benefit accruing therefrom to such ground or land," in response to an attack made upon a special assessment sought to be levied thereunder in that the same was limited to abutting property or near thereto, the court said:

"We think the charter has controlled their discretion in a manner entirely consistent . . . with their action by requiring them to make the assessment upon land abutting the improvement 'or near thereto.' If the council have power under the general words 'any street,' . . . in the first clause of the section, to improve a part of the street, as appears to be conceded, it seems to us clear that the words in the next clause, 'grounds bounding and abutting on such street,' confine the assessment to ground on the part of the street improved. If part only can be lawfully improved, that part only can be lawfully taxed; and this we are satisfied is the true meaning of the law."

It is to be found that the construction which we give to the language of the act is in accord with the authorities:

"Where the statute limits the property which may be subject to assessment to that which is abutting or contiguous or adjoining or fronting, only property so situated with reference to the improvement may be assessed." 28 Cyc., 1123 (III).

So also from the same authority: "As a general rule it is held that where the statute provides that property abutting on the street shall be assessed for the improvement that property which abuts on the improvement only may be assessed." 28 Cyc., 1126 (VII).

In Elliott on Roads and Streets (3d Ed.), section 683, the principle is summarized as follows:

"It is only such property as the statute authorizes the local authorities to lay an assessment upon that can be made liable for the expense of constructing, improving, or repairing a road or street. It is not within the authority of the local or municipal officers to assess property not made subject to assessment by statute, nor can they assess more property than the statute authorizes. Whatever part of a citizen's property the statute makes liable to the assessment, and no more, may be made to bear the expense of the improvement."

See, also, *Kendig* v. *Knight,* 60 Iowa, 29, 14 N. W., 78; *City of St. Louis* v. *Juppier,* (Mo.), 3 S. W., 401; *In re Morewood Avenue,* 159 Pa., 20, 28 Atl., 123, 132; In re 54th Street, 165 Pa., 8, 30 Atl., 503; *Ryan* v. *Town of Sumner,* 17 Wash., 228, 49 Pac., 487.

Had it been the legislative intent to provide for the assessment of other property than that fronting on the

street or part of the street improved, it may be assumed
that such intention would have been made clearly mani-
fest.

As hereinabove stated, the method of assessment legal-
ized by the act is according to frontage, and while it is
true that an apportionment on the theory of benefits
may be levied upon property benefited, but not con-
tiguous to the improvement (Page and Jones Special
Assessments, section 619; *Roberts* v. *City of Evanston,*
218 Ill., 296, 75 N. E., 923; *Shurtleff* v. *Chicago,* 190
Ill., 473, 60 N. E., 870), it is to be found that where an
assessment in proportion to frontage is the mode pre-
scribed by the legislature, property remote from the ac-
tual improvement, property not abutting upon the im-
provement, is not subject to assessment.

"Provisions are frequently found for assessing prop-
erty in proportion to its frontage. Such provisions
ordinarily restrict the assessment district to property
abutting upon such improvement and bounded by the
lines thereof. Property separated from the improve-
ment by other property is not subject to assessment
under such provision." Page and Jones, Special As-
sessments, 625; Cooley on Taxation (3d Ed.), 1222;
28 L. R. A. (N. S.) 1192. To the same effect,
*Langlois* v. *Cameron,* 201 Ill., 301, 66 N. E., 332; *Chil-
licothe* v. *Henry,* 136 Mo. App., 468, 118 S. W., 486;
*City of Cincinnati* v. *Batsche,* 52 Ohio St., 324, 40 N. E.,
21.

"If the legislature has provided for the apportioning
of the assessments according to the front-foot rule,
this seems to be held, in the great majority of jurisdic-
tions, to be a valid and conclusive determination by the

legislature that the benefits conferred by the improvement are conferred according to frontage, and accordingly such a method of assessment is held to be a valid and proper one." Page and Jones, 698; *Wilbur* v. *Springfield*, 123 Ill., 395, 14 N. E., 871; *Barber Asphalt Paving* v. *Kiene*, 99 Mo. App., 528, 74 S. W., 872; *City of Springfield* v. *Greene*, 120 Ill., 269, 11 N. E., 261.

The correctness of the principle stated by the authorities above is, in our judgment, founded upon the nature of the assessment itself—that is, in proportion to frontage—being, as it is, but an arbitrary method, more nearly approaching than any other the due relation of benefits and assessments only where the property burdened is contiguous to the improvements.

Where the property sought to be assessed does not abut upon the improvement, and is separated therefrom by other property, the front-foot rule loses its efficiency, and is rarely employed as a measurement by which equality of assessment may be even approximately gauged. In the instant case the authorization for assessment according to frontage precludes a procedure by the municipal authorities by any other means. It is a legislative declaration of the sole means deemed equitable, and until there is presented a case of palpable injustice by its operation it is the exercise of a legislative discretion with which the courts will not interfere.

That the property of respondent or other property adjacent to the improvement is benefited by the same, and in the same manner and to the same extent as property abutting immediately upon the improvement, as is argued by counsel for the city, and should be assessed therefor, affords no reason for the construction

of the act clearly not comprehended by its terms. The legislative declaration, as shown in the act, is that the municipal authorities of the city of Memphis shall have the power to assess property abutting the improved portions of its thoroughfares in accordance with its frontage thereon. It is determined for the authorities that, in accord with that rule, benefits to the properties so situated are presumed.

As stated in Hamilton on Special Assessments, section 221:

"Apportioning the cost by the frontage on the improvement is adopted by the legislature as constituting, in the judgment of its members, an apportionment in proportion to benefits as nearly as is reasonably practicable, and, as we understand it, is substantially the view taken by the authorities."

There is no authority granted to otherwise determine what property is benefited, and it cannot be presumed that such determination was left to the arbitrary judgment of the city authorities, with no prescribed method of ascertaining the extent of, and consequent assessment for, such benefits. Had the Legislature intended to authorize the apportionment of assessments according to benefits, or in some other method than that of frontage, certain it is that some vehicle or scheme for the determination of an approximate adjustment would have been devised by the legislature, with direction for the enforcement of its provisions by the municipal authorities.

In *Express Co.* v. *Patterson,* 122 Tenn., 293, 123, S. W., 357, in considering a provision seeking to tax the intangible property of foreign corporations in Tennessee,

and declaring the attempted taxation invalid, the court said:

"This includes the intangible property of all corporations, and subjects it to taxation; but this is not sufficient. The requirement that the legislature provide a mode for the ascertainment of the value of property—the assessment of it—so that it may be assessed according to its value, and that the taxes collected from it be equal and uniform with those assessed upon other property of the same value, is equally mandatory, and before any property can be valued and assessed for taxation a proper method and machinery for such valuation and assessment must be provided. *Bank* v. *Memphis,* 101 Tenn., 158, 46 S. W., 557; *Railroad Co.* v. *Williams,* 101 Tenn., 146, 46 S. W., 448."

Our construction of the act in question leaves no doubt of the invalidity of the ordinance under the authority of which the assessment of the property of the respondent herein is sought.

We are further of the opinion that the court of civil appeals was correct in assigning, as one ground of its finding that the assessment was invalid, that the property of the respondent had heretofore been assessed under the proceeding in 1912 for the improvement abutting her property. While it is true that there is no reason why property may not be assessed more than once for successive improvements, yet, where there is no limitation by the legislative authorities of the assessment of properties where a street or streets are to be improved by blocks of sections, that equality sought in special assessments may be entirely destroyed. The inequality resulting is forcibly pointed out in the case

of *Halpin* v. *Campbell*, 71 Mo., 493, where the court
states:

"The entire property adjoining a street is the prop-
erty subject to taxation for its general improvement,
and if such improvement be made in sections, and the
property adjoining the first section is required to bear
the entire expense of improving that section and then
to bear its proportion of the expense of improving
successive sections, the . . . first . . . will,
in the end, have borne a proportion of the entire ex-
penst greater than that which its value bears to that
of all the property on the street."

Again, in *Harriman* v. *Yonkers*, 181 N. Y., 27, 73 N.
E., 493, it appeared that eighty-five per cent, of the
amount of the assessment against which the plaintiff
sought relief was imposed for the expense of curbing
and guttering a new street, and that no part of the
lands of the plaintiff fronted on that street. The char-
ter authority provided that the expense of curbing, etc.,
should be assessed upon lots of land fronting upon the
street in proportion to their frontage. The assessment
was held invalid.

Taking the present case, should the procedure here be
declared valid, and the municipal authorities desire to
further improve Third street, creating for that purpose
several successive improvement districts, and the prop-
erty of respondent was assessed to bear its proportion-
ate share of the expense incident to each district, it
would result that her property would have to bear the
several burdens of successive assessments, while the
last district improved would bear only one. There ex-
ists no legislative authority for such action.

The judgment of the court of civil appeals is affirmed.