## CITY OF SOUTH FULTON v. PARKER et al.—65 S. W. (2d) 853.

Western Section. December 2, 1932.

Judgment affirmed by Supreme Court, June 24, 1933.

Pierce & Fry, of Union City, for appellant.

H. T. Smith, of Fulton, Kentucky, and Fenner Heathcock, of Union City, for appellee.

SENTER, J. The original bill was filed in this cause seeking to enforce the collection of certain front foot assessments from the abutting property owners on two street improvement districts in the city of South Fulton, Tennessee.

There was a demurrer filed by the defendant property owners, by which the constitutionality of the enabling act, under which the streets in question were improved, being chapter 768 of the Private Acts of 1927, amending chapter 401 of the Private Acts of 1909, incorporating the city of South Fulton, was attacked, and other grounds for the demurrer set forth, that there was no provision in the enabling act for enforcing the collection of the assessments against abutting property owners; and no provision in the enabling act fixing a lien on the property for the amount of the assessment which the

original bill sought to have declared; and no provision in the enabling act for the collection of penalties for failure to pay the assessments, and other grounds. The chancellor overruled the demurrer and granted an appeal from his action to the Supreme Court. The Supreme Court, while modifying and sustaining the decree of the chancellor in overruling and disallowing the demurrer, held that there was no provision in the enabling act or in the original charter of the town of South Fulton authorizing the creation of a lien for assessments for paving and improving the streets of the city. The court further held that, where taxes are assessed, it becomes a personal debt, and the government is entitled to all the remedies for their collection, including an ordinary suit at law if it chooses to resort to that remedy. The court further held that special assessments for street improvements are in the nature of taxes, and the power to impose them is sustained as an exercise of the taxing power. The court further held that there is an implied obligation to pay a tax lawfully imposed, and, if no specific mode of collection has been provided by the statute imposing the tax, it may be recovered by the assessing authority in an action of debt. The court further held that there is an obligation to pay special assessments when no mode of collection is provided, and in the fifth headnote states: ''The principle that there is an implied obligation to pay a tax lawfully imposed applies to a special or local assessment which the Legislature has expressly authorized, but for the collection of which it has failed to provide a mode of procedure, because the courts will not impute to the Legislature the intent to confer a right and at the same time to deny a remedy.''

Under the sixth headnote the court said: ''A statute authorizing special or local assessments for paving streets and failing to provide a mode of collection does not contemplate that such assessments will be a general personal liability of the property owner, only the property against which the assessment is made being liable for its payment; hence, the assessing body is entitled to a judgment for the amount of the assessment against the owner of the property assessed, the judgment to be satisfied only by levy on the property assessed.''

Under the seventh headnote it is stated: ''Where the statute authorizing assessments against abutting property for street improvements by necessary implication authorizes a judgment for the amount of the assessment against the owner, such judgment to be satisfied only by levy upon the property assessed, and where the owners of the property at the time of the assessment were also the owners at the time of the filing of a bill to collect the assessments, full relief may be awarded without deciding whether the assessments constitute a lien upon the property assessed.''

The court further held that, where the statute authorizing local assessments does not authorize the addition of a penalty for nonpay-

ment, a penalty cannot be sustained; the power of the city to add a penalty being entirely dependent upon legislative authority. City of South Fulton v. Parker, 160 Tenn., 634, 28 S. W. (2d), 639.

Upon a remand of the cause to the chancery court of Obion county, the defendants filed answers denying the material allegations of the bill with reference to the liability of the abutting property owners for the assessments made for the street improvements in question. Numerous defenses were set up in the answers attacking the regularity of the proceedings by the board of mayor and aldermen of the city of South Fulton in making these street improvements, and charging especially a failure upon the part of the board of mayor and aldermen to comply with the provisions of the enabling act, chapter 768 of the Private Acts of 1927. Among the defenses charging irregularity was that the act requires that, before any streets may be improved under the provisions of said enabling act, at least 75 per cent of the property owners owning property abutting the proposed improvement must sign a petition and file same with the board of aldermen of the city requesting the improvement to be made, and that 75 per cent of the property owners did not file such a petition, and that said street improvements were made without first having petitions filed containing the signatures of at least 75 per cent of the abutting property owners.

At the hearing of the cause, the learned chancellor found, and so held, that 75 per cent of the abutting property owners had not filed a petition with the board of mayor and aldermen requesting the improvements, and failed to comply with the provisions of the enabling act in that respect, and that the failure of the board of mayor and aldermen to procure 75 per cent of the abutting property owners to sign petitions requesting the creation of the two street improvement districts, and the improvement thereof, rendered void the assessments subsequently made against the abutting property owners and the abutting property, and upon this theory the chancellor dismissed the original bill at the cost of the complainant.

From this decree of the chancellor complainant has perfected an appeal to this court and has assigned this action of the chancellor as error, by several assignments of error.

By the first assignment it is said that the court erred in holding that there was not 75 per cent of the property owners fronting or abutting on Church street that signed the petition. By the second assignment it is said that the court was in error in failing to hold that 75 per cent of the property owners abutting on Church street, or substantially 75 per cent, signed the petition. By the third assignment it is said that the court was in error in dismissing complainant's bill and in failing to hold that complainant was entitled to a lien upon the property described in the bill belonging to the respective owners. By the fourth assignment it is

said that the court erred in holding 'that 75 per cent of the property owners was required to sign the petition in order to make a valid assessment. By the fifth assignment it is said that each and all of the defendants are estopped to set up any defense against the assessments for the reasons (a) the defendants and each of them requested and assented to the construction, with the understanding that their property was to be assessed; (b) because the defendants, and each of them, stood by and had knowledge that the city was making this expenditure and doing this work upon the front foot assessment plan, and the defendants, and each of them, made no effort to prevent the same.

Chapter No. 768 of the Private Acts of 1927 is the enabling act under which the board of mayor and aldermen of the city of South Fulton improved the two streets, or portions of streets, involved in this litigation. Section 2 of the act vests the power and authority in the city of South Fulton to contract for the construction and improvement of any of the streets of said city, or the reconstruction or resurfacing by grading, paving, macadamizing, curbing, guttering, draining, or otherwise improving same in such manner and with such material or materials as the legislative body of said municipality may prescribe, "and to cause the entire cost or expense of the aforesaid work and improvements to be assessed against the property abutting or adjacent to said street, avenue, alley or any other public place so improved." By the third section of the act it is provided as follows:

"Sec. 3. Be it further enacted, That before any improvement shall be made and bonds issued therefor, a petition signed by at least 75 per cent of the property owners owning property abutting on the proposed improvement shall be presented to the legislative body of the city and it shall then be the duty of the legislative body to adopt an ordinance that such improvement or improvements shall be made, which ordinance shall describe the nature and extent of the work, the character of material or materials to be used, the location and terminal points of the proposed improvements, and the streets, alleys, highways or other public places, or part or parts thereof, on which such improvements are to be made; and which shall direct the full details, drawings, plans, specification and surveys of said work, and estimates be prepared by the city engineer or such other person as may be designated in such ordinance; or said legislative body may adopt plans for such work already prepared.

"Such details, drawings, plans, specifications and estimates, shall, when completed, be placed on file in the office of the city engineer or other official designated in such ordinance, where the property owners who may be affected by such improvements may see and examine same; and said ordinance shall appoint a time when the legislative body of said municipality shall meet, which shall not be

less than two weeks after the date of the first publication of notice of said ordinance, to hear any objections or remonstrances that may be made to said improvement, the manner of making same, or the character of material to be used. Notice of the adoption of such ordinance shall be given by public notice once a week for two consecutive weeks in some newspaper of general circulation in said municipality. It shall not be necessary to set out in full in such notice, said ordinance, but such notice shall state the character of such improvement or improvements, the location and terminal points thereof, and also the time and place not less than two weeks from the date of the first publication of the notice, at which legislative body of said municipality shall meet to hear remonstrances or protests against the making of such improvement or improvements. At the time and place thus appointed, the legislative body shall meet and at said meeting, or at the time and place at which same may be adjourned, from time to time, all persons whose property may be affected by such improvement or improvements, may appear in person or by attorney or by petition, and protest against the making of such improvement or improvements, the material to be used and the manner of making same; and the said legislative body shall consider such objections and protests if any, and may confirm, amend, modify or rescind such original ordinance. Failure to object or protest at the time of confirmation of original ordinance shall constitute a waiver of any or all irregularities, omissions or defects of the proceedings taken prior to such time.''

It appears from the record that, prior to any action taken by the board of mayor and aldermen for the improvements of the two streets involved, there had been three petitions circulated among property owners, owning property abutting the streets to be improved; 75 per cent of the property owners did not sign these petitions; however, nearly all of the defendants did sign the petitions, or a majority of them. This seems to have first originated before the enabling act was passed, according to the evidence of the mayor, who testified in substance that a certain part of the property adjacent to the Illinois Central Railroad in South Fulton that had at one time been gravelled had become greatly worn, and that he took the matter up with the officials of the railroad, and submitted a proposition that, in the event the railroad would furnish the gravel to repair the worn places and to re-gravel the space, the city would do the necessary work of spreading and compacting the gravel, and that this offer was accepted, and the improvements made pursuant to that plan. Whereupon certain of the property owners and citizens of South Fulton conceived the idea of having streets on which they lived gravelled on the same terms, that is, that the property owners abutting would pay for the gravel and the city would grade the street and put the gravel down at the expense of the city. Upon

investigation by the mayor, he found that it would be necessary to have an enabling act by the Legislature authorizing the city of South Fulton to gravel or otherwise hard surface such streets as the city may desire to improve. Whereupon the enabling act was passed by the Legislature. After this act was passed, and before the streets in question were improved, or any definite steps taken, it appears that a mass meeting of the citizens and property owners abutting the streets in question met with the board of mayor and aldermen, and this meeting resulted in a motion by the property owners unanimously adopted, by those present, requesting the board of mayor and aldermen to improve the two streets or portions of streets by gravelling one street and putting a concrete surface on the other with curb and gutter. There seems to have been considerable discussion among the property owners present as to the type of street improvement they desired, and, after the engineer had explained that for the gravelled portion of the street it would require ten inches of gravel compacted to eight inches, this appears to have been agreed to by the property owners present at the meeting, which included nearly all of the defendants. For the other improvement, the property owners present desired concrete surface with curb and gutter. It seems that the matter was informally discussed by the property owners, but a motion was made and unanimously adopted by those present approving the improvements referred to. Whereupon the board of mayor and aldermen met shortly thereafter and passed an ordinance providing for the improvements; one to be gravel surface ten inches thick compacted to eight inches, and the other to be concrete. The city paid the cost of grading under the ordinance, the cost of the improvement, except the contribution made by the city of grading, was to be assessed to the abutting property owners under the front foot plan as provided in section 2 of the act. After the ordinance was passed, publication was made of a notice of the action taken by the board of mayor and aldermen and of the passage of the ordinance, and fixing the time and place at which the board of mayor and aldermen would meet to hear any protest or objection. This notice was published for two consecutive weeks prior to the meeting of the board of mayor and aldermen in a newspaper published in Fulton, Kentucky, there being no newspaper published in South Fulton. At the meeting of the board of mayor and aldermen, and after the publication of the notice, the mayor called for any objections or protests, and there were none made at that meeting. We will add that the notice of this meeting was posted conspicuously at several places in the town of South Fulton. At that meeting, there being no protest or objections from property owners, it was ordered that publication for bids be made for the construction of the improvements set forth in the ordinance, and in due course the contracts were let for the improvements.

After the improvements had been completed, which was not until the latter part of May, 1928, or about the 1st of June, the mayor published a notice inviting property owners to appear and offer any protest or objection to the assessments made for the improvement, and also as to whether the streets had been constructed according to contract. This meeting was held on June 5, and at that meeting several property owners appeared and filed written objections or protests to the assessments. These protests were based largely on the theory that the enabling act was unconstitutional, and that certain provisions of the act had not been followed, and no liens authorized by the enabling act. The depositions of certain of the property owners were taken, and they seem to have based their objection, not upon any alleged irregularity, but especially on the amount of the assessments against their property.

There was considerable discussion and certain explanations made, but no formal action was taken by the board of mayor and aldermen at that meeting or at any other meeting of the board on the objections filed. The mayor, however, did explain that, where there were inaccuracies, they would be corrected.

We are of the opinion that the passing of the ordinance authorizing the improvements to be made was regular, as was also the publication of the notice to property owners. We also think it clear that all of the property owners interested had ample notice of the meeting to hear protests. The meeting was called for that purpose, and due notice had been given by publication in the newspaper as well as by the posted notices, posted conspicuously in public places in South Fulton. None of the property owners appeared to make any protest or objection. The contracts for the improvements were let and the work was carried on to completion. The abutting property owners knew that the work was going forward and the improvements being made, and they did not make any protest or objection. This probably was not necessary, if they at the time considered that, under the proceedings as had by the board, the property owners and the abutting property could not be held liable. However, they knew that this work was going forward to ultimate completion, and we think at the time considered that it was being done lawfully and in accordance with the legally passed ordinance, and under the authority of the enabling act. Some of them may have been of the impression that the property owners would only have to pay for the cost of the material, and that it would be put down at the expense of the city. Some of them may have received this impression when the matter was first taken up for discussion. But they certainly knew of the passage of the ordinance and of the notice published before any work was done or any contracts let. They did not attend the meeting specially called for that purpose, and set forth in the notices published and posted. They made no complaint or objection

until after the work had been completed, and then certain of the property owners, not all of them, and not all of the defendants, did appear on June 5, 1928, and file protests either in person or by attorney.

We also find, as did the chancellor, that 75 per cent of the interested property owners did not sign the petitions requesting these improvements. The chancellor held this to be fatally defective, and rendered all assessments made against the abutting property owners and the abutting property void.

Appellees contend that other parts of the proceedings were irregular and not in compliance with the provisions of the enabling act, and especially with reference to a failure of the ordinance to provide definitely the character of materials that would be used and the character of improvements to be made. However, we are of the opinion that the record shows a compliance with the provisions of the enabling act, except with reference to the required percentage of property owners to sign the petition, or petitions, for the contemplated improvements.

In the case of City of Memphis v. Hill, 141 Tenn., 250, 208 S. W., 613, it was held that the rule of strict construction against a municipality would apply to an act of the Legislature authorizing the city of Memphis to levy special assessments against abutting property owners for street improvements. In that case it appeared that the act authorized the city to levy special assessments against all property abutting the street or a part of the street to be improved, and assessments to be made by the front foot plan, and the city in that case sought to assess property for the cost of the improvement which did not abut on the street to be improved. The court in that case held that, under the rule of strict construction, it could not be extended so as to authorize a levy of an assessment against property which did not abut the street improved.

In the present case it was urged in the Supreme Court, when the case was being heard on demurrer, that, independent of the special enabling act, chapter 768, Private Acts of 1927, and under charter authority existing before this enabling act was passed, the city of South Fulton was given the right to construct sidewalks in the city of South Fulton under the front foot assessment plan, and to have a lien on the abutting property for the cost of the improvements. However, the Supreme Court, in disposing of that question, held that such authority as was given for the construction of sidewalks to impose a lien could have no application to the building of streets in the city of South Fulton, and such former acts could not be extended so as to entitle the city of South Fulton to a lien on the property improved. This goes to emphasize that the rule of strict construction will be applied against a municipality in the matter of levy-

ing special assessments against property abutting street improvement districts. This same rule applies in all forms of taxation.

By section 3 of this enabling act, it is specifically provided that, before any improvement may be made under the act, at least 75 per cent of the property owners shall first sign a petition requesting the improvements. Section 3 also makes provision for the publication of the ordinance creating the proposed improvements, and provides that, if the abutting owners failed to appear and make protest as provided therein, they cannot afterwards be heard to complain. We are of the opinion that this provision of the act is intended to apply to minor irregularities, the quality of materials to be used, and the character of improvements to be made, and the estimated cost. But we are further of the opinion that the first essential requirement of the act is that at least 75 per cent of the property owners owning abutting property must file a petition with the legislative body of the city, requesting the improvement. When this is done, and not until this is done, is the city authorized to make the improvement and assess the cost thereof to the abutting property owners. If we are to follow the rule of strict construction adopted in all tax and special assessment cases, we cannot escape the conclusion that a failure of the city to have at least 75 per cent of the abutting property owners petition for this improvement constituted a fatal defect in the proceeding, in so far as the abutting property owners could be required to pay for the improvement. We are not unmindful of the further provision of the enabling act that irregularities in the proceedings shall not affect the validity of the bonds or of the assessments. We are not now passing upon the question as to what effect it would have upon the validity of the bonds. The bonds issued by the city for the payment of the improvements is the direct obligation of the city. The only question for our determination on this appeal is the question as to whether or not any assessment made against the abutting property owners, where there was a failure upon the part of the city to have 75 per cent of the property owners request the improvement, renders the assessment void. On this question we are constrained to hold that there was no error in the decree of the chancellor.

It results that all assignments of error are overruled, and the decree of the chancellor is accordingly affirmed.

Appellant and sureties on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.